[Civ. No. 30188. First Dist., Div. Two. Sept. 22, 1972.]

ALICE YARISH et al., Plaintiffs and Appellants, v.
LOUIS NELSON, as Warden, etc., Defendant and Respondent.

## COUNSEL

Jerome Berg for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Edward P. O'Brien and Gloria F. DeHart, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

KANE, J.—Plaintiffs Alice Yarish and Pacific Sun Publishing Co., Inc. appeal from the trial court's order denying their petition for a writ of mandate.

By their petition filed on January 26, 1971, appellants sought to compel respondent to allow correspondence, interviews and sound recordings with all inmates, but specifically with Ruchell Magee ("Magee") confined at San Quentin Prison. The undisputed facts disclose that Magee was imprisoned on a conviction of armed robbery involving kidnap and was also awaiting trial on homicide charges resulting from an escape attempt in the summer of 1970. Appellants' request for an interview with Magee had been denied by respondent pursuant to a prison regulation which prohibited news interviews with inmates awaiting trial or referred for prosecution.

In the wake of appellants' petition an order to show cause was issued requiring respondent's appearance on February 23, 1971. Following the issuance of that order, however, the court was informed by the Attorney General that as of February 18, 1971, the prison regulation was revised so as to allow interviews under certain conditions with prisoners awaiting trial. Thus, on February 20, 1971, a tape recorded interview with Magee by appellants' *counsel* was permitted, but the tape itself was not authorized for publication.

Based upon these later developments, on March 1, 1971, appellants filed an amendment to the original petition asserting that (1) the conditions required by the revised regulation with regard to the interviews were vague, arbitrary, unreasonable, uncertain and unworkable; (2) respondent improperly limited the use of the tape recording; and (3) respondent improperly refused to allow access to Magee's prison files.

After hearing the arguments of the parties and submission of the case, in an order dated March 10, 1971, the trial court found that the conditions requiring consent to interviews of inmates were clear and reasonable, but directed respondent to rephrase those provisions of the regulation which related to the procedure laid down for such interviews.[1] The court denied the writ in all other respects.

On March 22, 1971, the court issued a conditional order authorizing an interview with Magee pursuant to which an interview was scheduled for August 23, 1971. Appellants filed notices of appeal from both the March

---

[1]In compliance with the court order, respondent rephrased the procedural provisions of the regulation as of March 16, 1971. (See the revised regulation below.)

10 and March 22 orders. The latter appeal was, however, later withdrawn by appellants.

On August 21, 1971, two days prior to the scheduled interview with Magee, an escape attempt by George Jackson, resulting in his own death and the death of two other inmates and three correctional officers, brought about an emergency situation at San Quentin. Thereupon, respondent issued a new rule which, although not a general ban of media access to the prison, did prohibit press and other media interviews with specific individuals (Administrative Manual, § 415.071). As a consequence, the scheduled interview between appellant Yarish and Magee was canceled and subsequent requests for another interview were similarly denied by respondent.

*The Issues*

Initially we point out that since this appeal is being taken solely from the March 10, 1971 court order denying writ of mandate, the precise issues properly before us are, of necessity, only those which had been raised in the amended petition below and embraced in the court order appealed from, and may not be extended to events which took place after the issuance of the order. Thus, the issues to be determined here are (1) whether the conditions set up for interviews in the revised regulation[2] were unconstitutionally vague, arbitrary or unreasonable; (2) whether respondent properly limited the use of the tape recording in question; and (3) whether respondent's refusal to provide access to Magee's prison file was justified.

---

[2]The revised regulation provides in pertinent part as follows:

"A. Interviews with inmates charged with or being considered for prosecution for criminal offenses, or where other court proceedings are pending, may take place under the following circumstances:

"1. Inmates represented by counsel: The written consent of counsel and the inmate.

"2. Inmates not represented by counsel: Consent of the court in which the charge is pending.

"3. Where there is a codefendant on the same pending charge: a written statement, signed by the news media representative or the inmate's counsel, that notice of the interview has been given to all such codefendants and their counsel, in addition to 1 and 2 above.

"4. Where a court order restricting publicity has been entered: Consent of the court in which the charge is pending, in addition to 1, 2 and 3 above.

"B. Procedures.

"1. Requests for interviews shall be made to the Associate Warden, Administration, five working days in advance of the requested interview date.

"2. Interviews will take place only during normal visiting hours, 9:00 to 11:00 a.m. and 1:00 to 2:30 p.m., Monday through Friday.

"3. Interviews will not exceed one hour in length.

"C. With the exception of men under sentence of death, tape recorders may be used with the consent of the inmate on form CDC-146."

*(1) Reasonableness of conditions in the prison regulation.*

Appellants, in essence, claim (a) that, as a constitutional mandate, a prison inmate has an inherent right to free communication with the press; and that (b) freedom of the press under the First Amendment guarantees the news media an untrammeled right of access to prison inmates. Neither of these contentions is valid.

■ (a) While confinement to a penal institution does not strip the prisoner of all his constitutional rights *(In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640]; Pen. Code, § 2600), it is axiomatic that one who is detained in prison cannot reasonably expect to enjoy the privacy afforded to a person in a free society. Quite to the contrary, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights; and is certainly justified, if not dictated, by considerations (e.g., prison security and discipline) absolutely essential to the orderly administration of our penal system. *(Price* v. *Johnston* (1948) 334 U.S. 266, 285 [92 L.Ed. 1356, 1369, 68 S.Ct. 1049]; *Fortune Society* v. *McGinnis* (S.D.N.Y. 1970) 319 F.Supp. 901, 903-904.) In accord with the foregoing principles, several California cases have held that officials in charge of prisoners awaiting trial may censor their mail,[3] regulate communications between them and outsiders, and under appropriate circumstances totally prohibit communications between prisoners and certain classes of visitors. *(People* v. *Dinkins* (1966) 242 Cal.App.2d 892, 903 [52 Cal.Rptr. 134]; *People* v. *Morgan* (1961) 197 Cal.App.2d 90, 93-94 [16 Cal.Rptr. 838]; *Davis* v. *Superior Court* (1959) 175 Cal.App.2d 8, 20 [345 P.2d 513].)

■ It is evident from the record before us that conditions at San Quentin Prison during the times in question were certainly dynamic and, as later events proved, even volatile, fully justifying changes in policy toward prisoner interviews. Thus, abuses of the interview privilege prompted respondent on the very day before the attempted escape to restrict press interviews of prisoners on "lock-up" status to one interview every three months. The patently valid reasons for invoking this policy were expressed in a San Francisco Chronicle article which appeared, ironically, on the day of the abortive escape. This article, which appellants have included in their brief before this court, is set out below.[4]

---

[3]Except as to confidential correspondence with the prisoner's attorney and/or holders of public office (Pen. Code, § 2600, subd. (2); *In re Jordan* (1972) 7 Cal.3d 930 [103 Cal.Rptr. 849, 500 P.2d 873]).

[4]"San Quentin's New Policy On Interviews
"San Quentin Prison officials yesterday announced a new policy aimed at reducing the number of press interviews of 'celebrity' inmates.
"Associate Warden James Park said in the future a reporter will be allowed to see

(b) It has frequently been observed that *freedom of expression—* precious and vital though it is to a free society—*is not absolute.* Freedom of expression is not rooted in anarchy or chaos but rather is a delicate product of order in which the freedom of everybody is involved. Thus, it has always been recognized that in the maintenance and preservation of order, freedom of expression can be regulated by reasonable restrictions (*Garland* v. *Torre* (2d Cir. 1958) 259 F.2d 545, 548; *Worthy* v. *Herter* (1959) 270 F.2d 905, 908 [106 App.D.C. 153]). Such restrictions are particularly permitted with regard to the sources of news media information. Courts have frequently and consistently pointed out that the right to speak and publish does not carry with it the unrestrained right to gather information; nor has the right ever been held to confer upon the press a constitutionally protected right of access to sources of information not available to others (*Branzburg* v. *Hayes* (1972) 408 U.S. 665, 683-684 [33 L.Ed.2d 626, 641, 92 S.Ct. 2646, 2657]; *Zemel* v. *Rusk* (1965) 381 U.S. 1, 17 [14 L.Ed.2d 179, 190, 85 S.Ct. 1271]; *Tribune Review Publishing Company* v. *Thomas* (3d Cir. 1958) 254 F.2d 883, 885; *United Press Associations* v. *Valente* (1954) 308 N.Y. 71 [123 N.E.2d 777, 783]). As the court put it in *Trimble* v. *Johnston* (D.D.C. 1959) 173 F.Supp. 651, 656, "the liberty of the press does not include any legal right of securing assistance from public officials in procuring information that it is desired to print. It does not comprise any alleged right of access to material not available to others, any more than it would include the privilege of attending closed meetings at which news of interest might possibly be gathered."

This proposition was reaffirmed less than three months ago by the highest court of the land when it said: "Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies

---

any individual inmate from a 'lock-up' unit in the institution only once every three months.

"Although the order applies to all 180 men currently on lock-up status, Park made it clear that it was directed specifically at the 'Soledad Brothers'—George Jackson, Fleeta Drumgo and John Clutchette—and at Marin county defendant Ruchell McGee [*sic*].

"According to Park, there has been a lot of 'doubling back' by 'funny people who I doubt are really reporters' asking to see one of those four men several times.

"Park denied accusations by some young reporters of underground publications that he is trying to silence the inmates.

" 'We will handle all legitimate news gathering requests,' he said, 'but we just can't handle the volume we're getting now.'

"He added that the order was aimed less at news interviews than at 'socializing' which he said is being done under the guise of reporting.

"Park also announced that only one attorney's investigator a day will be allowed to see the four inmates, and charged that some attorneys have appointed 'investigators' merely to get individuals in for private chats with the inmates."

gathered in executive session, and the meetings of private organizations. Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded, and they may be prohibited from attending or publishing information about trials if such restrictions are necessary to assure a defendant a fair trial before an impartial tribunal." (*Branzburg* v. *Hayes, supra,* 408 U.S. at pp. 684-685 [33 L.Ed.2d at p. 641, 92 S.Ct. at p. 2658].)

In harmony with these premises, it has been held that restrictions on right of access to particular places at particular times are consistent with other *reasonable* restrictions on liberty based upon the police power, and these restrictions generally remain valid even though the ability of the press to gather news and express views on particular subjects may be incidentally hampered (*Cox* v. *New Hampshire* (1941) 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396]; *Los Angeles Free Press, Inc.* v. *City of Los Angeles* (1970) 9 Cal.App.3d 448, 455 [88 Cal.Rptr. 605]; *Garland* v. *Torre, supra,* at pp. 548-549). Under a generally accepted test, the reasonability of restriction on freedom of expression is upheld if the restriction is within a proper exercise of the police power; if it furthers an important or substantial governmental interest; if the resultant restriction is merely an incidental by-product which is no greater than is essential to the furtherance of that interest (*United States* v. *O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673]; *Jackson* v. *Godwin* (5th Cir. 1968) 400 F.2d 529, 541).

The regulation before us satisfies beyond doubt the reasonability test set forth above. The regulation does not impose an unjustified general restriction on the interviews of all prisoners, but solely on those who are charged with or being considered for prosecution for criminal offenses or against whom other court proceedings are pending. The imposition of the consent requirement by the inmate, his counsel, his codefendant or by the court as the case may be, is reasonably related to a legitimate end embraced in the police power of the state and is supportive of the prisoners' right to a fair trial. The procedural limitations are similarly aimed at the legitimate purposes of maintaining prison security, discipline and the orderly administration of the institution and cannot be said to be unduly burdensome or vague. It is more than obvious that the regulation is not related to suppression of freedom of expression, and any restriction on the First Amendment freedom flowing therefrom is merely incidental, and certainly no greater than is essential, to the furtherance of the above stated substantial, strong and compelling state interest. Under these circumstances, appellants' constitutional attack upon the regulation on the basis of vagueness and unreasonableness must be rejected as entirely unfounded.

We observe in passing that appellants invite us to consider issues not embraced in the order appealed from and events which took place subsequent to the filing of the notice of appeal. Thus, we are called upon to decide whether or not the complete ban of interviews introduced by respondent on August 23, 1971, is justifiable. This, of course, we cannot do. However, without deciding that issue, we note that the emergency situation brought about by the tragic events accompanying the escape attempt of George Jackson on August 21, 1971, would furnish full justification for at least an interim prohibition of interviews with specific inmates, including Magee.

### (2) *Restrictions placed on the use of tape recording.*

As previously indicated, on February 20, 1971 *counsel* for appellants made a tape-recorded interview with Magee in the prison; the tape, however, was not released for publication. Appellants now insist that the limitation imposed by respondent on the use of the tape recording constitutes an unjustifiable curtailment of freedom of expression. We do not agree.

We have concluded that the prison regulation requiring the consent of the prisoners' counsel to an interview with an inmate who faces a criminal trial on new charges is constitutional because it is reasonably designed to protect a legitimate end within the police power of the state, to wit: to protect the right of such inmate to a fair trial (see *supra*). The record here discloses that although counsel for appellants obtained the consent of Magee's counsel to an interview, this consent was extended only to those issues which were related to the mandate proceeding, but did not embrace matters concerning the pending criminal trial. It follows, therefore, that counsel for appellants, in fact, failed to secure a *valid* consent as contemplated by the regulation, which, in turn, made the interview itself invalid. It requires no further illumination that appellants may not derive or claim any right from an interview obtained in avoidance of an effective regulation.

### (3) *Right of news media to access of prison files.*

Appellants next contend that respondent unlawfully denied the news media access to Magees' prison files. This argument of appellants is clearly erroneous both as a matter of specific statutory exemptions and public policy.

While Government Code, section 6253, provides in general that public records are open for inspection, section 6254 sets forth specific exemptions

from the general rule. Thus, section 6254 provides in relevant part that *"nothing in this chapter shall be construed to require disclosure of records that are:* . . . (b) Records pertaining to pending litigation to which the public agency is a party . . . until such litigation . . . has been finally adjudicated or otherwise settled; (c) Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy; . . . (f) *Records of* complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or *any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes*; . . ." (Italics added.)

Also, Penal Code, section 2081.5, provides that "The Director of Corrections shall keep complete case records of all prisoners under custody of the department, which *records shall be made available to the Adult Authority and the Board of Trustees of the California Institution for Women* at such times and in such form as each board may prescribe." (Italics added.)

The cases interpreting Penal Code, section 2081.5, emphasize that the records of prisoners shall be made available only to those authorities who are specifically enumerated in the statute (*Alanis* v. *Superior Court* (1970) 1 Cal.3d 784, 787 [83 Cal.Rptr. 355, 463 P.2d 707]; cf. *In re Harrell, supra*, at p. 691).

Government Code, section 6255, underlines that, in addition to the specific exemptions listed in the statute, the agency may withhold a record for public policy reasons as well.[5] In accord, the cases spell out the view that as a mandate of public policy, certain communications and documents shall be treated as confidential and are not open for public inspection. Included in this class are documents and records kept on file in public institutions concerning the condition, care and treatment of inmates thereof and files of those charged with the apprehension, prosecution and punishment of criminals (*Runyon* v. *Board etc. of Cal.* (1938) 26 Cal.App.2d 183, 184-185 [79 P.2d 101]; cf. *Trimble* v. *Johnston, supra*, at p. 656).

The undisputed facts disclose that Magee is facing trial on criminal charges of the most serious nature, and a publicity order has been entered by the court in which those proceedings are pending. It is obvious that

---

[5]Government Code, section 6255, provides as follows: "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record."

serious prejudice to a fair trial could result from an eventual release of his prison files to the representatives of the press. (Cf. *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507].) Therefore, in the language of the statute, "the public interest served by not making the record public clearly outweighs the public interest served by disclosure of the record." (Gov. Code, § 6255.) It is, therefore, readily apparent that respondent was justified in denying access to Magee's prison files upon both the statutory exemptions and public policy.

■ Appellants, pointing to Government Code section 6259,[6] lastly maintain that the trial court committed error in refusing to make an *in camera* inspection of the record in question. Appellants' point is not well taken.

In the first place, it is obvious that the statute applies only to those cases where a prima facie showing has been made that the records are (1) public, and (2) being *improperly* withheld from a member of the public. As we have pointed out earlier, the prison files pertaining to Magee are not public records as a matter of law (Pen. Code, § 2081.5; *Alanis* v. *Superior Court, supra*; *Runyon* v. *Board etc. of Cal., supra*). Inherent in that determination is the corollary conclusion that they were not being improperly withheld, either.

Secondly, Government Code, section 6259, when applicable, provides that the "court shall decide the case after examining the record in camera, *if permitted by subdivision (b) of Section 915 of the Evidence Code,* papers filed by the parties and such oral argument and additional evidence as the court may allow." (Italics added.) Evidence Code, section 915, subdivision (b), in turn, provides that when the court is ruling on a claim of privileged official information, *and is unable to do so without requiring disclosure of the information claimed to be privileged,* the court *may* hold an *in camera* hearing. Section 915, subdivision (a) of the Evidence Code provides that,

---

[6]Government Code, section 6259, reads as follows: "Whenever it is made to appear by verified petition to the superior court of the county where the records or some part thereof are situated that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he should not do so. The court shall decide the case after examining the record in camera, if permitted by subdivision (b) of Section 915 of the Evidence Code, papers filed by the parties and such oral argument and additional evidence as the court may allow.

"If the court finds that the public official's decision to refuse disclosure is not justified under the provisions of Section 6254 or 6255, he shall order the public official to make the record public. If the judge determines that the public official was justified in refusing to make the record public, he shall return the item to the public official without disclosing its content with an order supporting the decision refusing disclosure. Any person who fails to obey the order of the court shall be cited to show cause why he is not in contempt of court."

subject to subdivision (b), the presiding officer may not require disclosure of information claimed to be privileged.

The foregoing provisions make it evident that an *in camera* inspection of the record in question is not required as a matter of law, but is trusted to the sound discretion of the trial court. Appellants do not allege, and the record before us would not support a claim, that the trial court abused its discretion. Under these circumstances, the claim of error by appellants is totally groundless.

The order of March 10, 1971, is affirmed. The appeal from the order of March 22, 1971, having been withdrawn and no filing fee having been paid thereon, is dismissed.

Taylor, P. J., and Rouse, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 16, 1972.