[Crim. No. 7247. Fourth Dist., Div. Two. Oct. 24, 1975.]

In re ALEXANDER J. MUSZALSKI on Habeas Corpus.

476

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and John W. Carney, Deputy Attorneys General, for Appellant.

Rowan K. Klein, under appointment by the Court of Appeal, for Respondent.

**OPINION**

KAUFMAN, J.—The People appeal from an order of the superior court granting in part Alexander J. Muszalski's petition for a writ of habeas corpus. (See Pen. Code, §§ 1506, 1507.)

Convicted apparently of the murder of his wife and the attempted murder of a member of his wife's family, Muszalski is an inmate at the California Rehabilitation Center, Corona. In September 1974 he sought to inspect all documents in his file as maintained by the Department of Corrections (hereinafter "Department"). The purpose of the requested inspection was to prepare for Muszalski's parole consideration hearing before the Adult Authority scheduled for January 1975. Muszalski was given an opportunity to review his file on October 4, 1974, at the

California Rehabilitation Center in the presence of Lindsey Doyle, a correctional counselor.

Prior to granting Muszalski permission to inspect his file, Department, through Mr. Doyle, classified a number of documents as confidential, removed these documents to the confidential case records section of the file and refused to permit Muszalski to inspect these documents. Among the documents classified by Department as confidential was a probation report dated January 5, 1966. The reason given by Department for classifying the probation report as confidential was "information could endanger other persons."

On October 28, 1974, Muszalski filed a petition for a writ of habeas corpus in Riverside Superior Court seeking to inspect all of the documents classified as confidential by Department. An evidentiary hearing was had at which Muszalski and Doyle testified. The People requested that Doyle be permitted to testify *in camera* concerning the confidentiality of the documents. The court denied this request. The court then reviewed the documents privately at the bench. After oral argument the matter was submitted, and, on November 20, 1974, the court rendered its order partially granting Muszalski's petition for habeas corpus, ordering Department to permit him to inspect four documents classified by the Department as confidential, including the probation report of January 5, 1966.

The People filed a timely notice of appeal on November 25, 1974. The Riverside Superior Court granted a stay of execution of its order pending appeal. The People now concede the propriety of the court's order as to three of the four documents ordered revealed by the court. So far as this appeal is concerned, therefore, the only item still in contention is the probation report of January 5, 1966.

### Contentions and Issues

The People contend that Muszalski should have been denied relief by the Riverside Superior Court because he failed to exhaust his administrative remedies prior to instituting habeas corpus proceedings in that court. The People further contend that the trial court abused its discretion in refusing to permit Lindsey Doyle to testify *in camera* to establish the propriety of the classification of the probation report as confidential and not subject to inspection.

Muszalski contends that the doctrine of administrative remedies is not applicable to him since he seeks to exercise a constitutional right; that the People presented no evidence in the trial court to establish the existence of a viable, efficacious administrative remedy; that the classification of the probation report as confidential on the ground that disclosure "could endanger other persons" is erroneous as a matter of law; and that the trial court did not abuse its discretion in refusing to permit Mr. Doyle to testify *in camera* as to Department's underlying reasons for classifying the probation report as confidential.

### *Discussion and Disposition*

#### *Exhaustion of Administrative Remedies*

We need not resolve in this case the question whether the doctrine of exhaustion of administrative remedies applies, for Muszalski is correct that at the evidentiary hearing on his petition for habeas corpus in the court below, the People failed to present any evidence that an administrative remedy was available. Although the People raised the issue in their return to the writ of habeas corpus in the superior court and while the issue was discussed at the evidentiary hearing, the People simply failed to present any proof that an administrative remedy was available to Muszalski. The People have appended to their opening brief on appeal a copy of section 110 of the Administrative Manual of the Department of Corrections and Department of Corrections Administrative Bulletin 73/49 (Oct. 17, 1973) and Transmittal Letter 14/74 (Sept. 17, 1974), asserting that these documents prove the existence of a viable, efficacious administrative remedy. These documents, however, were never presented to the trial court and may not properly be considered by us on this appeal. (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Hambarian,* 31 Cal.App.3d 643, 662 [107 Cal.Rptr. 878]; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90]; see 6 Witkin, Cal. Procedure (2d ed.) pp. 4208-4209 and cases there cited.)

#### *Confidentiality As Based on Danger to Other Persons*

Muszalski contends that documents may not be classified as confidential and withheld from inspection on the basis that their disclosure could endanger other persons. He concedes that *In re Olson,* 37 Cal.App.3d 783 [112 Cal.Rptr. 579], permits classification of documents as confidential where an "informant" would be exposed to an undue risk of harm by

disclosure. Muszalski urges, however, that in using the word "informant" *Olson* and the cases upon which the *Olson* court relied used the term "informant" in a strict and narrow sense, referring only to those persons who have provided information concerning the inmate's criminal activity. This narrow interpretation of *Olson* and its progenitors is erroneous.

Throughout its opinion the court in *Olson* utilized broader language in stating or considering the rule. On page 787 the court stated: "Petitioners concede that the state has an interest in maintaining confidentiality in order to preserve institutional security and the security of *informants and others* who might be endangered by disclosure." (Italics added.) In the next paragraph the court said: "[A]ll parties are in agreement that the state is entitled to keep confidential such records in an inmate's file which will create a danger to the security *of individuals* or the institution." (37 Cal.App.3d at pp. 787-788; italics added.) In footnote 5 of the *Olson* opinion the court noted: "There is authority which supports appellants' claim that there is a valid state interest in keeping records confidential with respect to the first three reasons upon which the authority relies: (1) To protect individuals, including informants inside and outside of prison, and insure institutional security. . . ." (37 Cal.App.3d at p. 788, fn. 5; italics added.) Again, on page 789 the court said: ". . . *Prewitt* [*In re Prewitt*, 8 Cal.3d 470] observes that in cases of term fixing and parole granting the private interest of an inmate in his liberty outweighs the public interest in preserving confidentiality in the absence of considerations involving the life or liberty of an *informant or other persons*. (8 Cal.3d at p. 476.)" (Italics added.) It is clear that the court in *Olson* contemplated an allowable claim of confidentiality on the basis of a threat of harm to "others," not only to informants in the strict sense.

The foregoing conclusion is in no way contrary to *Olson's* progenitors, *In re Prewitt*, 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326]; and *Morrissey* v. *Brewer*, 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]. Indeed, a close reading of these cases discloses that they, too, use the word "informant" in a very broad sense, referring to any person who provided information to the parole authority. (See *Morrissey* v. *Brewer, supra,* 408 U.S. at p. 487 [33 L.Ed.2d at pp. 497-498]; *In re Prewitt, supra,* 8 Cal.3d at pp. 475-476.)

■ We conclude that the Department's judgment that disclosure of the information would[1] endanger other persons, if not arbitrary or unreasonable, may constitute a sufficient basis for classifying a document as confidential and precluding its inspection.

We note, however, that aside from the fact that Department gave this reason for its confidential classification of the probation report of January 5, 1966, there is to be found in the transcript of the evidentiary hearing no evidence whatever from which it could be determined that Department's classification was reasonable and not arbitrary. No such evidence was presented by the People at the evidentiary hearing because of the trial court's refusal to permit Mr. Doyle to testify *in camera*. In the absence of an *in camera* hearing, the only way to inform the court of the facts and rationale underlying the Department's determination would have been to reveal in open court the information sought to be retained as confidential and the source thereof. We are thus brought face to face with the People's contention that the trial court abused its discretion in disallowing such *in camera* testimony.

*Abuse of Discretion in Refusing In Camera Testimony*

The court in *In re Olson, supra,* 37 Cal.App.3d at pp. 790-791, attempted to set forth some appropriate procedures by which Department's classification of documents as confidential could be reviewed. The court stated: "Upon the presentation of such petition [for habeas corpus] to the court and upon its [the court's] request, the document in question shall be forwarded to the court for its private perusal for the sole purpose of determining whether it is clothed with the indicia of confidentiality justifying nondisclosure." The court did not consider or discuss the possibility of an *in camera* hearing, and the *Olson* opinion is therefore not authority for the proposition that an *in camera* hearing is inappropriate. (*Grant* v. *Murphy,* 116 Cal. 427, 432 [48 P. 481]; *Hart* v. *Burnett,* 15 Cal. 530, 598-599.)

The claim of privilege being asserted by Department is that provided for in Evidence Code, section 1040.[2] Section 915, subdivision (b), of the

---

[1]We have advisedly substituted the word "would" for the word "could" as used by Department. The privilege of nondisclosure depends on the necessity for confidentiality outweighing the necessity for disclosure. (Evid. Code, § 1040, subd. (b)(2) [see fn. 2, *infra*].) The danger to others, therefore, must be probable, not just possible.

[2]Evidence Code, section 1040, provides in pertinent part:

"(a) As used in this section, 'official information' means information acquired in

Evidence Code provides that, when a court is ruling on a claim of privilege under section 1040 of the Evidence Code and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require disclosure of the alleged privileged information in a hearing *in camera*.[3]

Contrary to Muszalski's interpretation, the People do not contend that Evidence Code, section 915, subdivision (b), provides for a mandatory *in camera* hearing. The People recognize that Evidence Code, section 915, subdivision (b), is permissive and that the decision whether or not to hold an *in camera* hearing is committed to the sound discretion of the trial court. (Evid. Code, § 915, subd. (b); *Yarish* v. *Nelson,* 27 Cal.App.3d 893, 903-904 [104 Cal.Rptr. 205]; *People* v. *Superior Court (Biggs),* 19 Cal.App.3d 522, 531 [97 Cal.Rptr. 118].)

The People contend that the trial court abused its discretion in refusing to entertain an *in camera* hearing in the instant case. They argue that the private perusal of the documents in issue by the court as suggested in *Olson* will in many cases be insufficient to disclose the Department's reasons for its confidential classification. They urge: "The questions of confidentiality are complex and can only be made by trained, experienced correctional authorities knowledgeable about the inmate in question, the entire content of his file (not just the contested documents the court reviews), prison life in general, morality and ethics of the prison setting, prison relationships, and the rehabilitative process. In many cases the reasons for confidentiality may not spring from the face of the document but may be based on other factors in the inmate's

---

confidence by a public employee in the course of his duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person authorized by the public entity to do so and:

"  . . . . . . . . . . . . . . . . .

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

[3]Evidence Code, section 915, subdivision (b), provides: "(b) When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."

file or other conditions in the institution, or a psychological factor that would require expert analysis to appreciate." Further: "Such a hearing would allow the custodian of the records . . . to explain the significance of the documents and the reasons for their being withheld. Anything less would have the court acting in a vacuum, unable to obtain or use the factual tools which are essential to an informed judgment."

We find these arguments persuasive. The burden of demonstrating the need for confidentiality rests on the Department. (*In re Olson, supra,* 37 Cal.App.3d at p. 790.) If an *in camera* hearing pursuant to Evidence Code, section 915, subdivision (b), is the only means available to the Department to meet its burden of proof without disclosing the very information claimed to be confidential, it would constitute an abuse of discretion to refuse Department's request for an *in camera* hearing.

Because of a unique circumstance in the case at bench, however, we have concluded that the trial court did not abuse its discretion in refusing to conduct an *in camera* hearing. As previously pointed out, the only document at issue in this appeal is the probation report of January 5, 1966. This was the probation report submitted to the court at the time of Muszalski's sentencing under his present commitment. As such, a copy of the probation report was or should have been supplied to defense counsel (Pen. Code, § 1203, subd. (a)) and to defendant (Pen. Code, § 1203.01). Since, by statute, the contents of the probation report were required to be made known to Mr. Muszalski and his attorney at the time of sentencing, it would be irrational and could serve no useful purpose to classify the document as confidential and deny Muszalski access thereto at this late date.

The order appealed from is affirmed.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied November 14, 1975.