[Crim. No. 7329, Fourth Dist., Div. Two. Oct. 27, 1975.]

In re ALEXANDER J. MUSZALSKI on Habeas Corpus.

**COUNSEL**

Rowan K. Klein, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and John W. Carney, Deputy Attorneys General, for Respondent.

## OPINION

KAUFMAN, J.—Convicted apparently of the murder of his wife and the attempted murder of a member of his wife's family, Alexander J. Muszalski is an inmate at the California Rehabilitation Center in Corona. He petitions this court for a writ of habeas corpus to require the Department of Corrections (hereinafter "Department") to permit him and his attorney to inspect all documents in his file as maintained by Department. Muszalski seeks to inspect these records in preparation for a parole consideration hearing before the Adult Authority.

Muszalski was given an opportunity to inspect his file on October 4, 1974, at the California Rehabilitation Center in the presence of Lindsey Doyle, a correctional counsellor. Prior to granting Muszalski permission to inspect his file, Department, through Mr. Doyle, classified a number of documents as confidential, removed these documents to the confidential case records section of the file and refused to permit Muszalski to inspect these documents.

On October 28, 1974, Muszalski filed a petition for a writ of habeas corpus in Riverside Superior Court seeking to inspect all of the documents classified as confidential by Department. An evidentiary hearing was had, and, on November 20, 1974, the court rendered its order partially granting and partially denying Muszalski's petition for habeas corpus. The order required Department to permit Muszalski to inspect four documents classified by the Department as confidential, but upheld Department's claim of confidentiality as to a substantial number of other documents.

The People appealed to this court from that part of the order requiring Department to allow Muszalski to inspect the four documents. (See Pen. Code, §§ 1506, 1507.) That appeal was the subject of a companion case, *In re Muszalski, ante,* at page 475 [125 Cal.Rptr. 281] in which we affirmed the order of the trial court. Having no right of appeal from the order of the Riverside Superior Court insofar as that order denied his petition for writ of habeas corpus (*People* v. *Ryan,* 118 Cal.App.2d 144, 149 [257 P.2d 474]), Muszalski filed in this court a petition for habeas corpus to compel Department to permit him to inspect the documents as to which Department's confidential designation had been impliedly upheld by the order of the Riverside Superior Court. We issued an order to show cause to be heard and considered at the same time as the People's appeal. Contrary to the apparent understanding of the parties, we did not

consolidate the two matters. We have, however, after giving notice and opportunity to be heard to both parties, taken judicial notice of a number of documents lodged with this court in the appeal (*In re Muszalski, supra, ante,* at p. 475) as set forth in the margin.[1] (Evid. Code, §§ 459, 455, 452, subds. (c), (d).) At the request of Muszalski and without opposition from the Attorney General, we have also taken judicial notice of the documents appended to Muszalski's traverse herein as exhibits 7 and 8[2] and have considered the documents attached to the traverse as exhibits 4 through 6 as if there were certified copies of these documents in Muszalski's file as maintained by Department.[3]

### Contentions and Issues

Both parties make contentions raising a substantial number of issues. We have concluded, however, that the issue of Muszalski's failure to exhaust administrative remedies is dispositive. The other issues will not necessarily recur and it is therefore not necessary for us to address them.

### Exhaustion of Administrative Remedies

It is well settled as a general proposition that a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies. (E.g., *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291-296 [109 P.2d 942, 132 A.L.R. 715]; *McHugh* v. *County of Santa Cruz,* 33 Cal.App.3d 533, 538-539 [109 Cal.Rptr. 149].) Whether this general rule applies to applications for habeas corpus relief such as is sought in the present proceeding has apparently not been decided in California.

---

[1]We have taken judicial notice of the following: the clerk's and reporter's transcripts in 4 Crim. 7247, Department of Corrections Administrative Bulletin No. 74/41 (Aug. 15, 1974) and Uniform Inmate Record Procedures, section 1R-I-08, chapter 1 (Aug. 15, 1974), both appended to the appellant's opening brief in 4 Crim. 7247 as Appendix "A"; Department of Corrections Transmittal Letter No. 14/74 (Sept. 17, 1974), Department of Corrections Administrative Bulletin No. 73/49 (Oct. 17, 1973), Department of Corrections "Standard Appeal Procedure" sheets and "Inmate Appeal Form," and section 110 of the Department of Corrections Administrative Manual, all of which were appended to the appellant's opening brief as Appendix "B."

[2]Department of Corrections Administrative Bulletin Nos. 75/14 (Mar. 3, 1975) and 74/55 (Nov. 14, 1974).

[3]Declaration of Rowan K. Klein dated May 15, 1975; intra-departmental memoranda dated March 13, 1975, and November 19, 1974; intradepartmental memorandum from L. Doyle to Roland W. Wood dated November 27, 1974; Department of Corrections confidential case records summary dated April 30, 1975, listing documents classified as confidential and the reasons therefor; and letter dated February 26, 1975, from Deputy Attorney General John W. Carney to Rowan Klein.

Muszalski does not seriously contend that he has taken any action toward exhausting any administrative remedies. Indeed, the reporter's transcript of the evidentiary hearing in the companion case (*In re Muszalski, supra, ante,* at p. 475 of which we have taken judicial notice (see fn. 1, *ante*) discloses that Muszalski's counsel was aware of certain appeal procedures but took the position that Muszalski need not comply therewith inasmuch as there was no guarantee of a speedy, timely decision, keeping in mind that Muszalski was trying to prepare for a parole consideration hearing scheduled for January 1975.

Muszalski first contends that *In re Olson,* 37 Cal.App.3d 783 [112 Cal.Rptr. 579], is dispositive of the question since it undertook to prescribe appropriate procedures and failed specifically to include exhaustion of administrative remedies among the procedures outlined. (See 37 Cal.App.3d at pp. 790-791.) This contention is without substance. The court in *Olson* had no occasion to consider or discuss the applicability of the doctrine of exhaustion of administrative remedies. ■ A case is not authority for propositions neither considered nor discussed in the opinion. (*Grant* v. *Murphy,* 116 Cal. 427, 432 [48 P. 481]; *Hart* v. *Burnett,* 15 Cal. 530, 598-599.)

■ Next, Muszalski contends that, inasmuch as he is seeking vindication of a constitutional (due process) right, the doctrine of exhaustion of administrative remedies is not applicable to him. In support of this proposition he cites a number of federal decisions such as *Hardwick* v. *Ault,* 517 F.2d 295, 296-297; *McCray* v. *Burrell,* 516 F.2d 357, 361-365. These cases are not in point. They deal with the right of a state prisoner to maintain an action under federal civil rights statutes (e.g., 42 U.S.C. § 1983) without exhaustion of state judicial and administrative remedies. The result in these cases turns upon the history, purposes and language of the federal civil rights statutes. (See, e.g., *McNeese* v. *Board of Education,* 373 U.S. 668, 671 [10 L.Ed.2d 622, 625, 83 S.Ct. 1433]; *Monroe* v. *Pape,* 365 U.S. 167 [5 L.Ed.2d 492, 81 S.Ct. 473].)

More in point, although far from controlling, are the California cases holding that habeas corpus will not issue where the petitioner has failed to seek relief in a lower court (e.g., *In re Hillery,* 202 Cal.App.2d 293, 294 [20 Cal.Rptr. 759]) or where the petitioner has failed to exhaust his remedy of appeal (e.g., *In re Dixon,* 41 Cal.2d 756, 760-761 [264 P.2d 513]). In the *Dixon* case the petitioner, like Muszalski in the proceeding at bench, argued that a failure to appeal would not prevent a resort to habeas corpus when "fundamental constitutional rights are involved."

The court replied: "The same principles [requirement of exhaustion of remedy on appeal] should apply even though the alleged errors involving factual issues relate to an asserted denial of constitutional rights." (41 Cal.2d at p. 761.)

Closer yet are those cases holding that federal habeas corpus will not issue where it appears that the petitioner has not exhausted available state judicial and administrative remedies. (E.g., *Preiser* v. *Rodriguez*, 411 U.S. 475, 494-495 [36 L.Ed.2d 439, 452-453, 93 S.Ct. 1827]; *McCray* v. *Burrell, supra*, 516 F.2d at p. 361.)

Most in point and legally indistinguishable, we think, are the federal cases holding that a federal prisoner seeking relief similar to that sought by Muszalski herein must, as a condition precedent to a successful application for relief in the federal court,[4] exhaust the administrative remedies made available to him by the regulations of the United States Bureau of Prisons. (*Jones* v. *Carlson*, 495 F.2d 209, 210; *Waddell* v. *Alldredge, supra*, 480 F.2d at pp. 1079-1080; *Paden* v. *United States*, 430 F.2d 882, 883; *Green* v. *United States, supra*, 283 F.2d at pp. 688-689.)

The many reasons for the rule requiring exhaustion of administrative remedies are discussed in *McKart* v. *United States*, 395 U.S. 185, 193-195 [23 L.Ed.2d 194, 202-204, 89 S.Ct. 1657]. "A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a [law] in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals.

"Closely related to the above reasons is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or

---

[4]In the federal courts such applications frequently take the form of a petition for relief in the nature of mandamus. (See, e.g., *Knight* v. *Henderson*, 500 F.2d 389; *Waddell* v. *Alldredge*, 480 F.2d 1078, 1078-1079; *Green* v. *United States*, 283 F.2d 687, 688.)

else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, '[t]he exhaustion doctrine is, therefore, an expression of executive and administrative autonomy.' [Fn. omitted.] This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by [the Legislature], or require application of special expertise.

". . . In addition, other justifications for requiring exhaustion in cases of this sort have nothing to do with the dangers of interruption of the administrative process. Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

Many of the reasons enumerated in *McKart* are applicable to requests for relief such as that involved in the proceeding at bench. (Cf. *Waddell* v. *Alldredge, supra,* 480 F.2d at p. 1079.)

Finally, Muszalski contends that the administrative remedies provided him by Department are not efficacious and fail to establish "clearly defined machinery for the submission, evaluation and resolution of complaints" by an aggrieved inmate. (See *Endler* v. *Schutzbank,* 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297].) █ The People contend that in section 110 of the Administrative Manual of the Department of Corrections, Department of Corrections Administrative Bulletin 73/49 (Oct. 17, 1973), Transmittal Letter 14/74 (Sept. 17, 1974), Department of Corrections "Standard Appeal Procedure" sheets and "Inmate Appeal Form" 602, of which we have taken judicial notice (Evid. Code, §§ 459, 455, 452, subds. (c), (d); see fn. 1, *ante,* and accompanying text), Department has established viable, efficacious administrative remedies which include "clearly defined machinery for the submission, evaluation and resolution of complaints" by aggrieved inmates. We agree.

Paragraph 110.01 of section 110 of Department's administrative manual provides: "The Departmental Inmate/Parolee Appeals Proce-

dure has been established for the purpose of: [¶] 2. Providing a vehicle for review of staff decisions which may adversely affect an inmate's or parolee's welfare, status or program." Paragraph 110.011 provides: "Inmates . . . have the right to appeal any decision, condition or policy perceived as adversely affecting his or her welfare." Paragraph 110.012 provides in pertinent part: "Each inmate upon arrival in an institution . . . will be provided a copy of the institution . . . appeal procedure." Paragraph 110.013 provides: "All appeals will be submitted on CDC Form 602 (light green color), Inmate/Parolee Appeal Form. These forms are to be readily available to all inmates and parolees." Paragraph 110.014 provides: "The inmate/parolee, with assistance if needed, will complete one (1) copy of the CDC Form 602 and forward it, open or sealed, to the institution or parole region appeals officer." Section 110 goes on to provide a three-level appeal process. Paragraph 110.020 provides: "First level reviews must be processed and returned to the inmate/parolee within ten working days· after receipt. Second level reviews will be processed and returned to the inmate/parolee within 15 working days of receipt. [¶] Third level reviews must be processed and returned to the inmate/parolee within 20 working days of receipt. [¶] If exceptional delays prevent closure within the specified time limits, the inmate/parolee will be informed in writing of the reasons for the delay and given an estimated completion date."

Muszalski's contention that the administrative appeal process cannot be completed in sufficient time to permit an inmate to 'prepare for a parole consideration hearing must be rejected in view of the speedy determinations provided for in paragraph 110.020 of section 110 of department's administrative manual, *supra*.

Muszalski points out that the director's rule-making power (Pen. Code, § 5058) has been declared exempt from the operation of the Administrative Procedure Act[5] (*American Friends Service Committee* v. *Procunier,* 33 Cal.App.3d 252, 256-264 [109 Cal.Rptr. 22]) and urges: "Since the Director of the Department of Corrections need not follow the Administrative Procedure Act, he may change the rules and regulations of the Department of Corrections at any time." From this it is urged that the appeals procedure provided in section 110 of Depart-

[5]As applicable to the present proceeding Penal Code, section 5058 read: "The director may prescribe rules and regulations for the administration of the prisons and may change them at his pleasure."

We were advised at oral argument that the Governor has signed into law Assembly Bill No. 1282 amending Penal Code, section 5058 to provide that the director's rules and regulations must be promulgated in accordance with the Administrative Procedure Act, Government Code, section 11371 et seq. (Stats. 1975, ch. 1160.)

ment's administrative manual is inadequate. The conclusion does not follow. Without question the Director does have power to change the rules and regulations, but that fact does not evidence in any way any inadequacy in the appeals procedure provided for by section 110 of the administrative manual.

We conclude that Department has provided inmates with viable, efficacious administrative remedies which must be exhausted by an inmate before resorting to a petition for habeas corpus in the courts.

The petition for writ of habeas corpus is denied. The order to show cause heretofore issued is discharged.

Gardner, P. J., and Tamura, J., concurred.

A petition for a rehearing was denied November 14, 1975, and petitioner's application for a hearing by the Supreme Court was denied January 14, 1976. Wright, C. J., Mosk, J., and Sullivan, J., were of the opinion that the application should be granted.