[No. H036970. Sixth Dist. Oct. 13, 2011.]

TIM OCHOA, as Warden, etc., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
BRICE GLASGOW, Real Party in Interest.

**COUNSEL**

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anya M. Binsacca, Phillip Lindsay and Stacey D. Schesser, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Keith Wattley, under appointment by the Court of Appeal, for Real Party in Interest.

**OPINION**

**PREMO, Acting P. J.**—The Board of Parole Hearings (Board) found inmate Brice Glasgow suitable for parole, but Governor Arnold Schwarzenegger reversed the Board's decision based, in part, on confidential information in Glasgow's prison file from inmate informants. Glasgow then filed a petition for a writ of habeas corpus in the superior court challenging the Governor's decision and naming prison warden Tim Ochoa (Warden) as respondent. In the proceeding, the superior court ordered the Warden to choose between producing unredacted copies of the confidential information to Glasgow or opposing Glasgow's petition without relying on the confidential information. The Warden has filed a petition for a writ of mandate seeking immediate relief from this order. We issued a temporary stay of the superior court proceedings, requested opposition and reply, granted the Warden's request to file the confidential information here under seal, and issued a *Palma* notice (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893]), advising the parties that this court was considering issuing a peremptory writ of mandate in the first instance. We received Glasgow's opposition and the Warden's reply. We will grant the petition and issue a peremptory writ in the first instance.

EXTRAORDINARY RELIEF

██ Although pretrial writ relief is sparingly granted, where the trial court's ruling may properly be evaluated as to its correctness or erroneousness as a matter of law, and where leaving it in place may substantially prejudice the petitioner's case, appellate courts may entertain a writ petition. (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1274–1275 [258 Cal.Rptr. 66].) If the petitioner lacks an adequate means for

seeking timely relief, such as a direct appeal, or where the petitioner may incur prejudice that is not correctable on appeal due to the challenged ruling, the appellate courts may decide to intervene. (*Id.* at p. 1274.) The criteria for allowing writ relief will be applied depending upon the facts and circumstances of the particular case. (*Ibid.*)

Here, we deem it appropriate for this court to review the Warden's challenge to the superior court's pretrial order. There is no direct appeal from the order and leaving the order in place possibly presents the Warden with the untenable choice of disclosing the identity of confidential informants or defending against a habeas corpus petition without relevant, and potentially pivotal, evidence.

## BACKGROUND

In 1980, Glasgow shot and killed his niece's boyfriend and shot his niece in the back. A jury convicted him of first degree murder and assault with a deadly weapon. The trial court sentenced him to 30 years to life.

In April 2010, the Board found Glasgow suitable for parole. At the hearing, the Board acknowledged having confidential material indicating that Glasgow was suspected of "selling [his prescribed cancer pain reliever] or doing something inappropriate with it" in 2008. But it indicated that it would not be using the information in making its decision after Glasgow affirmed that there was no investigation pending against such a charge and explained that he was given his prescription once a day by a prison authority and required to consume it in the authority's presence.

In September 2010, the Governor reversed the Board's decision. He summarized his reasons at the end of a seven-page explanation as follows: "The gravity of the crime supports my decision, but I am particularly troubled by the evidence that Glasgow has not gained a sufficient understanding of the circumstances of his life offense, has not fully accepted responsibility for his actions, and has not demonstrated genuine remorse for the murder. I am also concerned by his recent elevated risk assessments, his negative conduct in prison, and his substantial criminal history." Earlier in the letter, the Governor had noted that Glasgow's "confidential file also contained information, deemed reliable, that indicated he was trafficking prescription drugs as recently as 2008."

In October 2010, Glasgow filed the underlying habeas corpus petition. The petition does not challenge the Governor's use of the confidential file, but the superior court noted and commented in its order to show cause that "the Governor states that there is reliable information that [Glasgow] was dealing

prescription medication as recently as 2008" and "There is no indication whether [Glasgow] was provided with this information prior to his parole suitability hearing; no such allegations were noted by the Board."

The Warden filed a return that mentioned nothing about the confidential information. A few weeks later, he filed a motion for an in camera review of the confidential records in Glasgow's file, accompanied by a notice of lodging the records conditionally under seal and a request to file the confidential records under seal. The motion explained the following: "The confidential records at issue here identify by name and factual circumstances inmates who informed correctional officers that [Glasgow] has sold them illegal drugs. The most recent of which was in 2008. [¶] The records themselves indicate that the safety and security of the confidential informants and CDCR's institutions will be prejudiced if the confidential records are publicly disclosed. The authors of the documents note that the information is confidential pursuant to [California Code of Regulations, title 15, section] 3321 and indicate why he/she believes that the information is reliable (e.g. the confidential source provided self-incriminating information and/or the information was corroborated by another source). The authors, specifically state that dissemination of the confidential information would jeopardize the safety and security of the informants and the institution. The clear, demonstrated interest in the safety and security of inmates and correctional staff should override the public's general interest in reviewing these documents. [¶] Furthermore, the proposed sealing is narrowly tailored and there are no less restrictive means available. [The Warden] is requesting that only the confidential records reviewed by the Governor be sealed. Any method less restrictive than sealing the records will not suffice to protect CDCR's interest in safety and security of its institutions and inmates as disclosing any portion of these records could reveal the identity of the confidential informant(s) (e.g. by disclosing the factual circumstances that only a few inmates know about)."

Glasgow responded by filing his own motion to unseal and disclose the confidential information. He claimed that he was "entitled to the factual information provided by the confidential informant in order to execute his right to due process under both the California and United States Constitutions." He argued: "Because it has been requested that the confidential information be sealed and Mr. Glasgow was denied any information regarding the nature or content of the information he is unable to challenge the veracity of the allegations stated therein, unable to present a defense to the allegations, and unable to challenge whether 'some evidence' existed to support the Governor's reversal of the Board's finding of suitability." He asserted that "the Governor failed to follow the regulatory protections that mandate that Mr. Glasgow be provided with as much information as possible without jeopardizing the identity of the source and also provide Mr. Glasgow with

proof of reliability." He "submitted that portions of the confidential information can be redacted and submitted to Mr. Glasgow's counsel so that an appropriate defense can be prepared" and asked "that he be provided as much of the confidential information, without jeopardizing any individuals, so that he can present a defense."

On March 29, 2011, the superior court issued an order in which the court acknowledged that it had reviewed the confidential documents relied upon by the Governor: "Having reviewed these documents under seal, this Court finds that the information cited by the Governor is facially relevant and cannot be summarily rejected as unreliable. [The Warden] argues that the material should remain under seal; [Glasgow] claims that to deny him liberty based upon confidential information would deprive him of due process." It concluded as follows: "Here, [the Warden] seeks to have this Court seal not just the identity of anyone involved in the reports, but the reports in their entirety and then, presumably, cite those records as a basis for upholding the Governor's decision. Thus, essentially, [the Warden] wants this Court to sanction the continued deprivation of [Glasgow's] liberty without giving him a meaningful opportunity to refute the charges against him. Such a procedure is untenable. If [Glasgow] is to be condemned by the charge, [Glasgow] must be provided with enough information about the allegation to mount a meaningful defense, if one is to be made. While this Court is mindful of the danger posed by the release of any names associated with the charge, [Glasgow] would be no better off than he is now with a disclosure that gives slightly more flesh to the barebones charge yet withholds the sole witness to the crime. . . . As such, this court will not consider the material filed under seal in evaluating the merits of this writ petition. Due process requires no less. [The Warden] may either disclose the confidential information to [Glasgow] or proceed with this writ without reliance upon it."

## DISCUSSION

 There is a valid state interest in keeping certain prison inmate records confidential to (1) protect individuals, including informants inside and outside of prison, (2) ensure institutional security, and (3) encourage candor and complete disclosure of information concerning inmates from both public officials and private citizens. (*In re Olson* (1974) 37 Cal.App.3d 783, 788, fn. 5 [112 Cal.Rptr. 579] (*Olson*).)

The official information privilege set forth in Evidence Code section 1040 provides for this interest. That section states, in pertinent part: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. [¶] (b) A public entity has a privilege to refuse to disclose official

information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and: [¶] . . . [¶] (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice . . . ."

Evidence Code section 915, subdivision (b), provides: "When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) or under subdivision (b) of Section 2018.030 of the Code of Civil Procedure (attorney work product) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and any other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither the judge nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."

Here, the superior court determined from its private perusal of the documents that the information was relevant and reliable. Given that the information originated from prison informants, the information was necessarily "clothed with the indicia of confidentiality justifying nondisclosure." (*Olson, supra*, 37 Cal.App.3d at p. 791.) Rather than order nondisclosure, however, the superior court ordered disclosure.

The superior court relied on *Morrissey v. Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] (*Morrissey*) and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326] (*Prewitt*) as justification for its order.

■ "*Morrissey* holds that proceedings for *parole revocation* must conform to minimum due process requirements, including the right to be heard and produce evidence, to confront and cross-examine adverse witnesses, and to a written statement by the fact finder of the evidence relied upon and reasons for revoking parole. [Citation.] In [the case of] *In re Prewitt*[, *supra*,] 8 Cal.3d 470 . . . , the court held *Morrissey* included proceedings to rescind a parole that has been granted but not executed, i.e., the date for the parolee's release has not yet arrived. [Citation.] [¶] *Morrissey* has never been extended, however, to BPT proceedings to fix the terms of prisoners or to determine whether to grant parole. [Citations.] As noted in [the case of] *In re Sturm* [(1974) 11 Cal.3d 258, 266 [113 Cal.Rptr. 361, 521 P.2d 97]], there is a

substantial distinction between parole revocation and discretionary parole release. Parole revocation involves the loss of a parolee's conditional liberty. [Citation.] In contrast, parole release concerns a mere anticipation or hope of freedom. In addition, a decision to release on parole is an · ' "attempt to predict by subjective analysis whether the inmate will be able to live in society without committing additional antisocial acts[; in contrast, a revocation hearing involves a specific charge of out-of-prison misconduct which commends itself to quasi-judicial resolution]." ' [Citations.] For these reasons, the minimum due process requirements which must be afforded prisoners in respect to the parole release determination are to be decided on a case by case basis." (*In re Arafiles* (1992) 6 Cal.App.4th 1467, 1480 [8 Cal.Rptr.2d 492]; see *In re Sturm, supra*, 11 Cal.3d at p. 266 ["We decline, accordingly to hold *Morrissey* directly applicable and instead adhere to a case by case determination of whether a particular incident of due process is required for parole decisions under the test we designated in *Prewitt.*"].)

■ In *Prewitt*, the court remarked, "although the issue is not now before us, . . . certain proceedings in connection with the fixing of terms and granting of paroles may not now conform to due process requirements. When determining whether a procedure involved in the term-fixing or parole-granting process violates due process, 'the reviewing court must consider the objectives sought to be achieved by the challenged procedure, the possible unfairness to the prisoner, and the availability of alternative procedures which are less burdensome to the prisoner.' " (*Prewitt, supra*, 8 Cal.3d at p. 475.)

"The rationale of *Prewitt* is that a policy of nondisclosure increases the potential of unfairness towards the inmate because he cannot intelligently decide what subjects to discuss at his predisposition interview [citation], nor can he challenge or refute information that might be false or inaccurate unless the prisoner learns what information the Authority has in its possession that is being considered with respect to the fixing of his term or granting him parole." (*Olson, supra*, 37 Cal.App.3d at p. 789.)

■ In short, the official information privilege is not an absolute privilege, but rather a privilege provided by statute and public policy that may only be exercised within the parameters delineated by *Prewitt*. (*Olson, supra*, 37 Cal.App.3d at p. 790.)

But the *Prewitt* rationale does not apply if "a disclosure will impose a risk of harm to some informant . . . ." (*Prewitt, supra*, 8 Cal.3d at p. 475; see *In re Love* (1974) 11 Cal.3d 179, 185 [113 Cal.Rptr. 89, 520 P.2d 713] [no disclosure "where an informant would be endangered"].) In such a case, the informant's identity must be withheld. (*Prewitt, supra*, at p. 475.)

■ We therefore conclude that the superior court abused its discretion in ordering disclosure of or nonreliance on the confidential information—the information (1) was clothed with the indicia of confidentiality and therefore conditionally privileged, and (2) came from prison inmate informants who would necessarily be endangered if their identities were disclosed.

We observe that Glasgow himself did not request disclosure of the informants' identities but only as much of the confidential information that could be disclosed to his counsel without a revelation of identities. This position comports with the *Prewitt* case-by-case approach as it is designed to " 'consider the objectives sought to be achieved by the challenged procedure, the possible unfairness to the prisoner, and the availability of alternative procedures which are less burdensome to the prisoner.' " (*Prewitt, supra*, 8 Cal.3d at p. 475.)

While neither party has discussed the issue, we believe that the in camera hearing procedure provided for in Evidence Code section 915, subdivision (b), is applicable for the purpose of having the Warden assist the superior court in determining how much of the confidential information can be disclosed to Glasgow's counsel without revealing informants' identities.

■ " '[Q]uestions of confidentiality are complex and can only be made by trained, experienced correctional authorities knowledgeable about the inmate in question, the entire content of his file (not just the contested documents the court reviews), prison life in general, morality and ethics of the prison setting, prison relationships, and the rehabilitative process. In many cases the reasons for confidentiality may not spring from the face of the document but may be based on other factors in the inmate's file or other conditions in the institution, or a psychological factor that would require expert analysis to appreciate.' . . . 'Such a hearing would allow the custodian of records . . . to explain the significance of the documents and the reasons for their being withheld. Anything less would have the court acting in a vacuum, unable to obtain or use the factual tools which are essential to an informed judgment.' " (*In re Muszalski* (1975) 52 Cal.App.3d 475, 482–483 [125 Cal.Rptr. 281], quoting the People's arguments that the court found "persuasive.")

As to this, "we deem such procedure to be an expedient one in view of the need to balance the respective rights of [Glasgow] and the state in accordance with the views articulated in *Prewitt*. In the achievement of this objective both [Glasgow] and the state must, of necessity, put their trust and faith in the judiciary." (*Olson, supra*, 37 Cal.App.3d at p. 791.)

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to (1) vacate its order of March 29, 2011, (2) enter an order sealing the lodged confidential information, and (3) set an in camera hearing date with the Warden for the purpose of thereafter disclosing—only to Glasgow's counsel—as much of the confidential information that can be disclosed without revealing informants' identities. The temporary stay of the superior court proceedings is dissolved upon the finality of this opinion. This opinion is made final immediately as to this court. (Cal. Rules of Court, rule 8.264(b)(3).)

Bamattre-Manoukian, J., and Mihara, J., concurred.