[No. B036483. Second Dist., Div. Six. June 6, 1989.]

JOSEPH M. WASKO, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS, Defendant and Respondent.

COUNSEL

Joseph M. Wasko, in pro. per., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Carol A. Greenwald and Sonja K. Berndt, Deputy Attorneys General, for Defendant and Respondent.

OPINION

ABBE, J.—Appellant Joseph M. Wasko is an inmate at the California Men's Colony (CMC). He appeals from the denial of a petition for writ of mandate requesting that the court order respondent California Department of Corrections to set aside its decision denying his administrative appeal from a diagnostic unit evaluation (DUE) prepared by G. E. Miller or in the alternative to strike all portions of the evaluation authored by Miller.

Appellant's contentions on appeal concern whether the preparation of a DUE by a person not licensed to practice psychology violates Business and Professions Code section 2902, and Penal Code sections 5068 and 5068.5. We find that the trial court did not err in denying the writ and affirm.

FACTS

Appellant is serving a life term at CMC, having been convicted of kidnapping for ransom, burglary and attempted escape. At CMC he voluntarily participated in a program known as Category X. Pursuant to the program a DUE was prepared by correctional counselor and diagnostic unit coordinator Miller.

After appellant received a copy of the report, he requested Miller to correct what appellant claimed were inaccuracies. Miller refused, and appellant pursued administrative remedies without success.

Having exhausted his administrative remedies, appellant applied to the superior court for a writ of mandate to set aside the administrative appeal or to strike all portions of the DUE authored by Miller.

The petition alleged that Miller was not licensed to practice psychology and therefore was not authorized to make predictions or interpretations of appellant's future behavior.

Some of the statements made by Miller in the DUE which appellant objected to as predictions of future behavior are: "The issue of victim trauma was introduced in the discussion by this writer in an attempt to estimate [Wasko's] level of concern and guilt. For the most part, Mr. Wasko accepts only partial guilt based on his distorted perception in relationship to violence potential and criminal sophistication in this crime. At one point he stated that he did not believe the victim suffered lasting trauma. [¶] Mr. Wasko tends to speak in terms of viewing himself as a rather spontaneous and ill prepared law breaker rather than a career criminal. His viewpoint is seen as rather ludicrous, in view of his apparent criminal intent which has been evident since the age of 19. [¶] Obviously, [Wasko's] traits are reflective of what [he] prefers to display at the surface level and is viewed as something of a facade he has learned to present quite well in social settings. [¶] In this writer's estimation, Mr. Wasko's sociability and charming demeanor are utilized as a means to conceal the other undesirable aspects of his thinking and personality. [¶] Presently, [Miller's] primary concern is the likelihood Mr. Wasko will choose to engage in future criminal acts if released to the community. [¶] In addition, [Wasko] could become violent and irrational in his thinking if under the influence of drugs and/or alcohol. [¶] Mr. Wasko could react violently if threatened or faced with anger producing situations. [¶] In this writer's estimation, Mr. Wasko should involve himself in therapy."

As additional evidence that Miller was practicing psychology, appellant points to a portion of a letter to him from the chief of inmate appeals. The relevant portion of the letter states: "The documentation required for the Board of Prison Terms is two-fold: First, an overview of your criminal history and behavior relative to past criminal activity; and second, as much as is possible, a preduction [*sic*] of your future behavior based on observations of your [*sic*] during the Category X program and your institutional development. Mr. Miller has accurately depicted your previous criminality. Mr. Miller is required to chronicle all behavior. No where [*sic*] does he make a statement that is not found elsewhere in your file."

A letter attached to appellant's petition from an associate warden states in part: "The Category X diagnostic evaluation as prepared by Mr. Miller is supported by the findings of the psychological report by Dr. Orling."

The trial court denied appellant's petition on the ground that administrative mandamus was not available because there was no proceeding ". . . in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." (Citing Code Civ. Proc., § 1094.5.) The court further stated that traditional mandamus is not

available because the statutes relied on by appellant do not support his position, and therefore, the petition establishes no mandatory duty to be performed by respondent.

## DISCUSSION

A writ of administrative mandate is available only where by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal. (Code Civ. Proc., § 1094.5; *Keeler* v. *Superior Court* (1956) 46 Cal.2d 596 [297 P.2d 967].)

"A writ of [traditional] mandate will lie only 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; . . .' (Code Civ. Proc., § 1085.) ■ More particularly, 'Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citation].' " (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 863 [132 Cal.Rptr. 464, 553 P.2d 624].)

### I.

■ Appellant contends the trial court erred in concluding that administrative mandamus is not available because no hearing was required to be given. He argues that under *Chavez* v. *Civil Service Com.* (1978) 86 Cal.App.3d 324 [150 Cal.Rptr. 197], and *Eureka Teachers Assn.* v. *Board of Education* (1988) 199 Cal.App.3d 353 [244 Cal.Rptr. 240], the requirement of a hearing is implied in the absence of an expressed contrary intent.

In *Chavez* the plaintiff appealed his dismissal as a probationary employee from the sheriff's department to the civil service commission, alleging the dismissal was due to discriminatory practices. The civil service rules provided for an appeal of a dismissal on the grounds of discrimination, but did not expressly provide for a hearing. The court held that ". . . where there is no specific provision for a hearing, a hearing requirement is to be implied, absent a contrary intent expressed in the provisions creating the right to appeal . . ."; thus Code of Civil Procedure section 1094.5 applied. (*Chavez* v. *Civil Service Com. supra,* 86 Cal.App.3d at p. 332.)

In *Eureka Teachers Assn.,* a teacher challenged the board of education's decision to change a student's grade. Education Code section 49070 required that before any grade change the teacher who gave the grade be allowed to state the reason. The code also provided for an appeal. The court held, "[i]t is not necessary that a *specific* provision for a hearing and taking

of evidence be stated for Code of Civil Procedure section 1094.5 to apply," citing *Chavez* as an example. (*Eureka Teachers Assn.* v. *Bd of Education, supra,* 199 Cal.App.3d at p. 362.)

In the instant case the regulation under which appellant pursued the administrative appeal provides: "Every person under the jurisdiction of the Department of Corrections has the right to appeal decisions, conditions, or policies affecting his or her welfare. Each warden, superintendent, and parole region administrator must provide a system whereby an inmate or parolee may request and receive administrative review of any problem or complaint. Such reviews will involve upper-level staff and will insure that the complaint receives prompt, courteous and considerate attention." (Cal. Code Regs., tit. 15, § 3003.)

The appeal process provided for here consists of a written appeal, an interview and written response. (CMC General Order No. 28.) The appeal may be pursued to three different levels. (*Ibid.*) There is no express provision for a formal hearing and no provision for the taking and preservation of testimony.

Administrative mandamus is properly directed to formal adjudicatory proceedings and not to informal administrative actions. (Cf. *Royal Convalescent Hospital, Inc.* v. *State Board of Control* (1979) 99 Cal.App.3d 788, 793 [160 Cal.Rptr. 458].)

It does not seem reasonable to hold that a formal adjudicatory proceeding was intended to be required every time a prison inmate appeals a decision, condition or policy affecting his or her welfare. Such decisions, conditions and policies can affect almost every area of an inmate's life and in many instances will give rise only to relatively minor grievances.

Although the implication of a requirement for a formal adjudication may make sense in the context in which *Chavez* and *Eureka Teachers Assn.* were decided, it is not reasonable to infer such a requirement from the regulation in question here, and we decline to do so. The administrative appeal in this case was an informal administrative action for which administrative mandamus is not a proper remedy.[1] (Cf., *Royal Convalescent Hospital, Inc.* v. *State*

---

[1] The fact that some levels of review are designated as "formal" (see e.g., Cal. Dept. of Corrections Admin. Manual, § 7309, subd. (a)) does not make them formal adjudicatory proceedings. Such appeals are designated as formal for the purpose of distinguishing them from the requirement that an inmate make every effort to informally solve the problem with the appropriate staff member before proceeding with the appeal. (*Id.,* at subd. (b).)

Nor does the fact that some inmates may be allowed formal hearings under some circumstances convince us that a formal hearing was required in this case. Appellant asks us to take judicial notice of the fact that one inmate, Paul Perveler, received a formal hearing. However,

*Board of Control, supra,* 99 Cal.App.3d at p. 793.) We find no basis for a writ of administrative mandamus.

■  The next question is whether traditional mandamus is available, that is, whether the law specifically requires respondent to either grant appellant's appeal or to strike the portions of the DUE prepared by Miller. We hold traditional mandamus is not available.

## II.

Appellant contends that Business and Professions Code[2] section 2903 requires a correctional counselor who prepares diagnostic reports in which predictions for a prisoner's future behavior are made to be licensed to practice psychology. We disagree.

Section 2903 prohibits the practice of psychology without a license except as otherwise provided in the chapter. It defines the practice of psychology as rendering or offering to render for a fee any psychological service including predicting and influencing behavior, constructing, administering and interpreting tests of attitudes and personality characteristics, and the diagnosis, prevention, treatment and amelioration of psychological problems and emotional and mental disorders.

However, even if the preparation of a DUE falls within the definition of the practice of psychology, section 2910 provides an exception to the licensing requirements of section 2903.

Section 2910 states: "Nothing in this chapter shall be construed to restrict or prevent activities of a psychological nature on the part of persons who are salaried employees of . . . governmental agencies, provided: [¶] (a) Such employees are performing such psychological activities as part of the duties for which they were hired; [¶] (b) Such employees are performing those activities solely within the jurisdiction or confines of such organizations; [¶] (c) Such persons do not hold themselves out to the public by any title or description of activities incorporating the words 'psychology,' 'psychological,' 'psychologist,' 'psychometry,' 'psychometrics' or 'psychometrist'; [¶] (d) Such persons do not offer their services to the public for a fee,

---

that does not show that a formal hearing was required in every case. We note that Perveler's hearing arose from a disciplinary matter. Formal hearings are expressly required for disciplinary matters. (See Cal. Code Regs., tit. 15, § 3320(b).) The request to take judicial notice is denied because the matter requested to be noticed is irrelevant. (*Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751].)

    [2] In this portion of the opinion all statutory references are to the Business and Professions Code.

monetary or otherwise; [¶] (e) Such persons do not provide direct health and mental health services."

The only question here is where the preparation of a DUE constitutes provision of "direct . . . mental health services."

CMC General Order No. 78 provides in part: "The Category X Program is designed to produce specialized diagnostic reports for both the Board of Prison Terms and Departmental programming staff. The final evaluation is used by the Board of Prison Terms primarily to determine treatment needs and as a resource tool to assist in determining parole suitability. The Category X evaluation may also be used in determining specialized institutional needs, management needs, and appropriate institutional placement. . . . The completed reports will address both the behavioral and psychological aspects of each case, emphasizing special problem areas."

As General Order No. 78 provides, the diagnostic report is produced for the "Board of Prison Terms and Departmental programming staff." Diagnostic reports in the Category X program are not produced directly for the inmate and thus their production does not constitute provision of direct mental health services.

### III.

Appellant next contends that Penal Code[3] sections 5068 and 5068.5 prohibit a correctional counselor from preparing a DUE. We disagree.

Section 5068 provides in part: "When the diagnostic study of any inmate committed [to an indeterminate sentence] so indicates, the director shall cause a psychiatric or psychological report to be prepared. . . . The report shall be prepared by a psychiatrist or psychologist licensed to practice in this state."

Under this section a psychological report is required to be prepared by a psychiatrist or psychologist only when a diagnostic study so indicates. There is no requirement that the diagnostic study will be prepared by a licensed psychologist or psychiatrist. To the contrary the implication is that the diagnostic study will not be prepared by a licensed psychologist or psychiatrist.

In the instant case a correctional counselor prepared a diagnostic study. The record indicates that a psychological report was prepared by Doctor

---

[3] All further statutory references in this portion of the opinion are to the Penal Code unless otherwise specified.

Orling. Appellant does not allege that Doctor Orling was not licensed to prepare such a report.

Section 5068.5, subdivision (a) provides: "Notwithstanding any other provision of law, . . . any person employed or under contract to provide diagnostic, treatment, or other mental health services in the state or to supervise or provide consultation on these services [for] the state correctional system shall be a physician and surgeon, a psychologist, or other health professional, licensed to practice in this state."

However, we are convinced that the Legislature never intended this section to apply to diagnostic studies, such as a DUE, that are prepared for the benefit of the governmental agency rather than for the direct benefit of the inmate himself.

Our opinion is based on section 5068, which requires that a psychological report be prepared by a licensed psychologist, but has no such requirement for a diagnostic study. If the Legislature had intended to require that diagnostic studies also be prepared by a licensed psychologist, we presume it would have said so in section 5068.

Where an evaluation is primarily for the benefit of the correctional system, such as the instant DUE, section 5068.5 does not apply.

## IV.

Finally, appellant's reliance on *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446], is misplaced. In that case the jury returned a verdict imposing the death penalty. At the penalty phase of the trial a psychopharmacologist testified that the defendant would continue his violent behavior in prison. Our Supreme Court held that the testimony should not have been admitted because: "(1) [E]xpert predictions that persons will commit future acts of violence are unreliable, and frequently erroneous; (2) forecasts of future violence have little relevance to any of the factors which the jury must consider in determining whether to impose the death penalty; (3) such forecasts, despite their unreliability and doubtful relevance, may be extremely prejudicial to the defendant." (*Id.,* at p. 767.)

Appellant argues that if our Supreme Court would not accept as reliable expert testimony from a person who is licensed, then Miller's "lay-predictions" cannot be accepted as reliable.

The answer, of course, is that a correctional counselor who has substantial experience in dealing with prison inmates may in fact be a better predic-

tor of future violent behavior than a licensed psychologist with less experience. Moreover, even if Miller's evaluation standing alone is of questionable reliability, the record indicates that the conclusions reached by Miller are supported by the findings of the psychological report prepared by Doctor Orling.

In any event, the question here is not one of reliability of opinion; the question is rather whether respondent has a duty to have DUEs prepared by licensed psychologists. Neither *Murtishaw* nor any of the statutes cited to us by appellant imposes that duty.

The judgment of the trial court is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1989.