19 Cal.Rptr.3d 92 (2004)
122 Cal.App.4th 659
Justin WRIGHT, Plaintiff and Appellant,
v.
STATE of California et al., Defendants and Respondents.
No. C044302.
Court of Appeal, Third District.
September 21, 2004.
*93 William E. Gilg for Plaintiff and Appellant.
Bill Lockyer, Attorney General, Darryl L. Doke, Thomas D. McCrackin and Kevin W. Reager, Deputy Attorneys General, for Defendants and Respondents.
NICHOLSON, Acting P.J.
Plaintiff Justin Wright appeals from a judgment of dismissal in favor of the State of California, the Department of Corrections and certain administrative and medical personnel in that department (collectively, the State). The trial court granted the State's demurrer to Wright's complaint alleging medical malpractice and failure to furnish medical care. We affirm the judgment.
We conclude, as did the trial court, that Wright cannot maintain this action because he failed to exhaust his available administrative remedies. Wright concedes that he has not completed the administrative process provided by the Department of Corrections *94 (Department). Although money damages are unavailable in the administrative process, Wright must exhaust his administrative remedies before seeking judicial relief. Even where money damages are unavailable, the exhaustion requirement furthers important interests: prison autonomy, mitigating damages, application of Department expertise, and order in the court system. We also conclude the State is immune from suit for intentional infliction of emotional distress and negligence.

FACTS
Wright is a state prison inmate. Beginning August 22, 2001, he alleges, the State improperly denied him timely medical care to repair two detached retinas, resulting in extensive loss of vision. Specifically, from August 22, 2001, to September 3, 2001, the State failed to provide him with any medical attention. In addition, after a doctor examined him on September 4, 2001, the State denied him timely surgery to repair the two detached retinas, despite the recommendations of three doctors. Finally, after his surgery on October 31, 2001, the State failed to provide the medications prescribed for his recovery.
Wright alleges six counts: four based on state law, and two on federal law. Under state law, he alleges medical malpractice (count one), failure to furnish medical care (count two), intentional infliction of emotional distress (count three), and negligence (count four) (collectively, the state counts). Under federal law, he alleges deliberate indifference to serious medical needs (count five), and cruel and unusual punishment (count six) (collectively, the federal counts).
In his complaint, Wright alleges that on March 31, 2002, he filed a government tort claim with the State Board of Control, which the board rejected on May 10, 2002.
Wright also alleges that he has exhausted his administrative remedies. Although Wright asserts the State denied him medical care beginning on August 22, 2001, he did not start the administrative process until March 24, 2002. He still had not received his final administrative decision (third-level review) by the time he filed his first amended complaint on December 13, 2002, the operative pleading here. The Department, by regulation, normally has 60 working days to complete the third-level review. (Cal.Code Regs., tit. 15, § 3084.6, subd. (b)(4).)[1] According to Wright, the "time limit is way past since [he] began his appeal process on March 24, 2002. As a result [he] has substantially complied with the administrative exhaustion requirement of Title 42 of the United States Code, section 1997e" (italics added) and has "exhausted his administrative remedies."
The State demurred to Wright's entire complaint, asserting his failure to exhaust administrative remedies, and asked the trial court to dismiss the complaint without prejudice. The State and the Department demurred to Wright's third and fourth counts (intentional infliction of emotional distress and negligence), claiming public entity immunity for those counts and asking the trial court to dismiss those counts with prejudice. The trial court granted the demurrers, and Wright appeals.

DISCUSSION
Because we are reviewing a demurrer sustained without leave to amend, we *95 treat the complaint's properly pled material facts as true. (Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171.)

I

Exhaustion of Administrative Remedies

A. Wright Must Exhaust His Administrative Remedies

Wright contends that he need only substantially comply with the requirement to exhaust administrative remedies. The contention is without merit. Under both state and federal law, a prisoner must exhaust available administrative remedies before seeking judicial relief. By 1941, as a rule of general application, state courts required litigants to exhaust their administrative remedies. (E.g., Abelleira v. District Court of Appeal (1941) 17 Cal.2d 280, 291-296, 109 P.2d 942; McHugh v. County of Santa Cruz (1973) 33 Cal.App.3d 533, 538-539, 109 Cal.Rptr. 149.) The exhaustion requirement is jurisdictional: a court cannot hear a case before a litigant exhausts administrative remedies. (Abelleira, supra, 17 Cal.2d at pp. 291-293, 109 P.2d 942; McHugh, supra, 33 Cal.App.3d at p. 539, 109 Cal.Rptr. 149.)
Beginning in the 1960's, prisoners, often through advocacy groups, began using state and federal courts, including California courts, to reform jail and prison conditions. (Feeley & Rubin, Judicial Policy Making and the Modern State: How the Courts Reformed America's Prisons (2000) pp. 34-50 (Judicial Policy Making); Judicial Intervention in Corrections: The California Experience  An Empirical Study (1973) 20 UCLA L.Rev. 452, 455 [no author named].) In many states, including California, courts virtually took over the day-to-day operation of jails and prisons. (See, e.g., Judicial Policy Making, supra, at pp. 111-128 [detailing Santa Clara County's jail litigation].)
Prisoner filings increased in the ensuing decades. In 1980, prisoners filed 23,230 petitions in federal courts. (Sullivan, Prisoners Seeking Monetary Relief for Civil Rights Claims: Must They Exhaust Administrative Remedies Under § 1997e before Filing a Claim in Federal Court? (2002) 8 Wash. U. J.L. & Pol'y 419, 421, fn. 14.) By 1996, that number tripled to 68,235 petitions. (Ibid.) According to a 1994 report, inmate suits accounted for 55 percent of all suits filed against the State of California. (Mueller, Inmates' Civil Rights Cases and the Federal Courts: Insights Derived From a Field Research Project in the Eastern District of California (1995) 28 Creighton L.Rev. 1255, 1278, fn. 91 (Inmates' Civil Rights Cases).)
In the 1970's, California's state courts specifically applied the general exhaustion requirement to prisoner suits, requiring prisoners to exhaust administrative remedies before seeking judicial relief. For example, courts applied the general rule that "a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies" to prisoners seeking access to their inmate records. (In re Muszalski (1975) 52 Cal.App.3d 500, 503, 125 Cal.Rptr. 286 (Muszalski); accord In re Thompson (1975) 52 Cal.App.3d 780, 783, 125 Cal.Rptr. 261 (Thompson).) Moreover, the California Supreme Court held that "[t]he requirement that administrative remedies be exhausted `applies to grievances lodged by prisoners.'" [Citations.] (In re Dexter (1979) 25 Cal.3d 921, 925, 160 Cal.Rptr. 118, 603 P.2d 35.)
Under state law, "`exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts.'" (Rojo v. Kliger (1990) 52 Cal.3d 65, 85, 276 Cal.Rptr. 130, 801 P.2d 373 (Rojo); accord *96 Karlin v. Zalta (1984) 154 Cal.App.3d 953, 979, 201 Cal.Rptr. 379 (Karlin).) "As Witkin explains: `The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the administrative tribunal, and the courts may act only to review the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal.'" (Rojo, supra, 52 Cal.3d at p. 85, 276 Cal.Rptr. 130, 801 P.2d 373, italics in original, quoting 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 265.)
Paralleling the exhaustion requirement under state law, the federal Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.A.] section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (42 U.S.C.A. § 1997e(a) [amended in 1996 by the PLRA].) Congress passed the PLRA to curtail frivolous prisoner lawsuits. (Porter v. Nussle (2002) 534 U.S. 516, 522 [122 S.Ct. 983, 987, 152 L.Ed.2d 12, 20] (Porter).) Before enactment of the PLRA in 1996, lawsuits by prisoners were a significant percentage of the civil docket of the federal courts. (Inmates' Civil Rights Cases, supra, 28 Creighton L.Rev. at p. 1307.) In 1995 alone, prisoners filed nearly 40,000 new suits, amounting to 19 percent of the federal civil docket. (Schlanger, Inmate Litigation (2003) 116 Harv. L.Rev. 1555, 1558.) Federal courts in this state were no exception. In 1995, "inmates' civil rights actions constitute[d] nearly 30% of the case filings" in the Eastern District of California. (Inmates' Civil Rights Cases, supra, 28 Creighton L.Rev. at p. 1259.)
The exhaustion of administrative remedies requirement furthers several important societal and governmental interests. These include bolstering administrative autonomy, mitigating damages, giving agencies opportunity to make factual findings, encouraging settlement, filtering out frivolous claims, fostering better prepared litigation, and promoting judicial economy. (Booth v. Churner (2001) 532 U.S. 731, 737 [121 S.Ct. 1819, 1823, 149 L.Ed.2d 958, 964] (Booth); Rojo, supra, 52 Cal.3d at pp. 83-86, 276 Cal.Rptr. 130, 801 P.2d 373.) In addition, the requirement ensures "the use of administrative agency expertise and capability to order and monitor corrective measures." (Rojo, supra, 52 Cal.3d at p. 83, 276 Cal.Rptr. 130, 801 P.2d 373.)
Here, state law provides an administrative remedy. Under a regulation promulgated by the Department, a prison inmate may appeal any departmental decision, action, condition, or policy adversely affecting the inmate's welfare. (§ 3084.1, subd. (a); Pen.Code, § 5058; Muszalski, supra, 52 Cal.App.3d at pp. 506-508, 125 Cal.Rptr. 286; Thompson, supra, 52 Cal.App.3d at p. 783, 125 Cal.Rptr. 261.)
This administrative appeal process generally consists of four levels of review: an informal review followed successively by three formal reviews. (§ 3084.5, subds. (a)  (e).) The Department must complete its informal level review within 10 working days, its first formal level review within 30 working days, and its second formal level review within 20 working days. (§ 3084.6, subds. (a), (b).) Normally, the Department must complete the third formal level review within 60 working days. (Id. subd. (b)(4).) There are exceptions that can extend these time limits, including the complexity of the decision, action, or policy. (§ 3084.6, subd. (b)(5)(B).) If an *97 exceptional delay prevents the Department from completing a level of review within the specified time limits, the Department must notify the inmate in writing of the reasons for the delay and the estimated completion date. (Id. subd. (b)(6).) This notice requirement does not apply, however, to the third formal level review. (Ibid.)
Despite the state and federal exhaustion requirements, Wright alleges that his substantial compliance with the exhaustion requirement is adequate because the Department had not resolved his third formal level review at the time he filed his first amended complaint. All that Wright alleges in support of his claim, however, is that since he filed his first amended complaint on December 13, 2002, the "time limit is way past since [he] began his appeal process on March 24, 2002." As we shall explain, this allegation is insufficient. (See Thompson, supra, 52 Cal.App.3d at p. 783, 125 Cal.Rptr. 261 [petition for writ of habeas corpus denied in part because inmate failed to allege specific facts showing that the Department's administrative process was an unavailable or ineffective remedy excusing him from the exhaustion requirement]; see also Muszalski, supra, 52 Cal.App.3d at p. 508, 125 Cal.Rptr. 286 [petition for writ of habeas corpus denied because inmate's allegation that the Department's review process did not guarantee a timely decision was insufficient to excuse him from the exhaustion requirement].)
Wright failed to exhaust his available administrative remedy because, as he acknowledges, his third formal level review had not been resolved at the time he filed his first amended complaint. An inmate who has not completed the review process provided under section 3084.1, subdivision (a) has not exhausted the available administrative remedies. (See In re Serna (1978) 76 Cal.App.3d 1010, 143 Cal.Rptr. 350 [inmate did not exhaust available administrative remedies because he did not request a third-level review under the Department's inmate appeals process preceding that provided by § 3084.1].)
Moreover, the Department's delay does not excuse Wright's failure to exhaust his available administrative remedies. Wright has not specifically alleged that the Department has delayed his third formal level review beyond the 60-day term. The remedy for an unreasonable delay is not a suit for damages, but a writ of mandate ordering the Department to perform its duty by completing the review. (See Wasko v. Department of Corrections (1989) 211 Cal.App.3d 996, 259 Cal.Rptr. 764 [recognizing that Department is subject to writ of mandate, but denying writ because inmate requested hearings to which he was not entitled].)
In addition, Wright's claims for medical malpractice and failure to furnish medical care arguably involve a complex decision, action, or policy, one of the exceptions that can extend the time limits for administrative response. (§ 3084.6, subd. (b)(5)(B).) This exception could extend the time limit for the third formal level review without the need for a written statement or an estimated completion date. (§ 3084.6, subd. (b)(6).)[2] We conclude, then, that Wright has failed to exhaust his administrative remedies.

*98 B. Even Though Damages Are Unavailable, Prisoners Must Exhaust Their Administrative Remedies

Regarding his state law counts, Wright also claims that he need not exhaust his administrative remedies because he seeks only money damages, which the administrative process cannot provide. Even in these circumstances, we hold that Wright must exhaust his administrative remedies.
Under state law, inmates are required to exhaust administrative remedies, even when seeking money damages unavailable in the administrative process. (See Westlake Community Hosp. v. Superior Court (1976) 17 Cal.3d 465, 476, 131 Cal.Rptr. 90, 551 P.2d 410 [even though money damages were unavailable, doctor must exhaust hospital's administrative remedies before filing suit].) Some intermediate California courts have stated that an administrative remedy is unavailable where a plaintiff seeks money damages unavailable in the administrative process. (Karlin, supra, 154 Cal.App.3d at p. 980, 201 Cal.Rptr. 379 [but holding that although they sought money damages, the plaintiffs must exhaust available administrative remedies].) However, even though the administrative process may not provide the precise relief a plaintiff requests, courts have held there are salutary reasons for requiring exhaustion of administrative remedies. (Ibid.) For example, in Westlake, supra, 17 Cal.3d at page 476, 131 Cal.Rptr. 90, 551 P.2d 410, the Supreme Court held that "even if the absence of an internal damage remedy makes resort to the courts inevitable [citation], the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." Reconciling these two competing principles requires "a qualitative analysis on a case-by-case basis with concentration on whether a paramount need for agency expertise outweighs other factors." (Karlin, supra, 154 Cal.App.3d at p. 981, 201 Cal.Rptr. 379; accord, Rojo, supra, 52 Cal.3d at pp. 87-88, 276 Cal.Rptr. 130, 801 P.2d 373.) Weighing the factors leads us to apply the exhaustion requirement here.
Notably, the United States Supreme Court held that prisoners seeking money damages must exhaust available administrative remedies, even when damages are unavailable. (Booth, supra, 532 U.S. at p. 733, 121 S.Ct. 1819 [under 42 U.S.C.A. § 1997e(a), even though he only sought money damages unavailable in the administrative process, state prisoner must complete prison administrative process before filing a federal claim].)
The judiciary defers to prison administration. (See Small v. Superior Court (2000) 79 Cal.App.4th 1000, 1013-1014, 94 Cal.Rptr.2d 550 [recognizing United States Supreme Court's deference to prison administration].) Thus, we defer to prison administrators to resolve prisoner grievances. (Muszalski, supra, 52 Cal.App.3d at p. 508, 125 Cal.Rptr. 286.) Allowing prisoners deliberately to avoid the Department's administrative process by asking only for money damages, a remedy unavailable in the administrative process, would weaken the effectiveness of the Department by encouraging inmates to ignore its grievance resolution procedures. (Id. at p. 506, 125 Cal.Rptr. 286.)
Requiring prisoners to exhaust the Department's administrative process may mitigate damages. (Muszalski, supra, 52 Cal.App.3d at p. 506, 125 Cal.Rptr. 286; see Williams v. Housing Authority of Los Angeles (2004) 121 Cal.App.4th 708, 722, 17 Cal.Rptr.3d 374 (Williams) [the exhaustion requirement gives an administrative agency opportunity to redress the alleged wrong]; Rojo, supra, 52 Cal.3d at pp. 83-86, *99 276 Cal.Rptr. 130, 801 P.2d 373 [administrative process of Fair Employment and Housing Act (FEHA) mitigates damages].) In fact, to ensure that it has an opportunity to mitigate the damages of prisoners who would suffer serious and irreparable harm without expedited review, such as those needing medical care, the Department has an expedited emergency review process. (§ 3084.7, subd. (a).)
Exhausting the administrative process in this case would also take advantage of the Department's expertise to make findings of fact, apply the law to the facts, and provide a record for the courts to review. (See Muszalski, supra, 52 Cal.App.3d at p. 505, 125 Cal.Rptr. 286 [Department's administrative process necessary to develop the factual background, apply the law in the first instance, and give opportunity for the Department to exercise discretion and expertise]; see also Williams, supra, 121 Cal.App.4th at p. 722, 17 Cal.Rptr.3d 374 [FEHA's administrative process promotes agency expertise and development of complete record].)
The utility of the department's fact-finding expertise exists even when the plaintiff's requested relief is unavailable through the administrative process. Thus, in County of Contra Costa v. State of California (1986) 177 Cal.App.3d 62, at pages 75-78, and footnote 8, 222 Cal.Rptr. 750, we held that because of the utility of administrative fact-finding, plaintiff was required to exhaust his administrative remedies before raising a constitutional challenge to a statute, even though the administrative agency could not declare the statute unconstitutional.
Moreover, the exhaustion requirement ensures the orderly administration of the judicial system. The exhaustion requirement prevents the chaos of a multiplicity of actions and potentially conflicting decisions. (Muszalski, supra, 52 Cal.App.3d at p. 505, 125 Cal.Rptr. 286; Olson v. County of Sacramento (1974) 38 Cal.App.3d 958, 965, 113 Cal.Rptr. 664 (Olson).) Administrative review filters out frivolous lawsuits, preserving the resources of the courts. (Porter, supra, 534 U.S. at p. 525, 122 S.Ct. 983; Booth, supra, 532 U.S. at p. 737, 121 S.Ct. 1819.) A court reviews the administrative decisions; thus, the court is not required to develop a record or define the issues in dispute. (Williams, supra, 121 Cal.App.4th at p. 722, 17 Cal.Rptr.3d 374.)
Finally, while Wright's multiple causes of action complicate this case, enforcing his obligation to exhaust available administrative remedies is not an impediment to a civil remedy. (See Rojo, supra, 52 Cal.3d at pp. 83-84, 276 Cal.Rptr. 130, 801 P.2d 373 [FEHA's administrative remedy not an impediment to civil suit].) As an illustration, Wright had no reason to fear that the statute of limitations governing either his federal or state counts would expire during the time necessary to exhaust his administrative remedies. The statute of limitations would not bar Wright's federal counts. (42 U.S.C.A. § 1997e; Brown v. Morgan (6th Cir.2000) 209 F.3d 595, 596; Harris v. Hegmann (1999) 198 F.3d 153, 158-159.)
Neither the statute of limitations for medical malpractice, nor the time limit for filing suit after rejection of a government tort claim, would bar Wright's state counts. First, a litigant would usually have one year from the time the litigant discovered the injury to file suit for medical malpractice. (Code Civ. Proc., § 340.5.) A prisoner, however, would have up to three years to file suit for medical malpractice. (Belton v. Bowers Ambulance Service (1999) 20 Cal.4th 928, 86 Cal.Rptr.2d 107, 978 P.2d 591 [holding that Code Civ. Proc., § 352.1 extends the time which a prisoner has to file a medical *100 malpractice suit under Code Civ. Proc., § 340.5 to the three-year maximum].)
Second, in his complaint, Wright alleges that on March 31, 2002, as required by Government Code section 905.2, he filed a government tort claim, which the Board of Control rejected on May 10, 2002. Usually, a person would have six months from the rejection of such a claim to file a court action. (Gov.Code, § 945.6, subd. (a)(1).) This six-month time limit might have prompted Wright to file his original complaint on November 7, 2002.
However, since a litigant must exhaust administrative remedies before filing a court action, we exclude the time consumed by the administrative proceeding from the time limits that apply to pursuing the court action. (E.g., Baillargeon v. Department of Water & Power (1977) 69 Cal.App.3d 670, 682-684, 138 Cal.Rptr. 338 (Baillargeon); Olson, supra, 38 Cal.App.3d at p. 965, 113 Cal.Rptr. 664; Myers v. County of Orange (1970) 6 Cal.App.3d 626, 634-637, 86 Cal.Rptr. 198 (Myers); 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 659, pp. 841-843.) This procedure serves the orderly administration of justice. (E.g., Baillargeon, supra, 69 Cal.App.3d at p. 683, 138 Cal.Rptr. 338; Olson, supra, 38 Cal.App.3d at p. 965, 113 Cal.Rptr. 664; Myers, supra, 6 Cal.App.3d at p. 634, 86 Cal.Rptr. 198.) Thus, we exclude the time during which a litigant reasonably pursues his administrative remedy from the six-month time limit for filing a court action after the Board of Control rejects a government tort claim. (Gov.Code, § 945.6, subd. (a)(1).)
In short, then, we conclude that when Wright filed his complaint, an administrative remedy was still available. Wright has conceded, in his complaint, that he failed to exhaust this administrative remedy; he went to court after only "substantially compl[ying]" with the exhaustion requirement. The trial court, therefore, properly sustained without leave to amend the State's demurrer to Wright's complaint, dismissing the complaint without prejudice.

II

Public Entity Immunity
The trial court dismissed with prejudice Wright's intentional infliction of emotional distress and negligence causes of action against the State and the Department, based on their immunity from suit as public entities. Wright argues the State and the Department are liable by statute for his injuries. We disagree.
As noted in Zuniga v. Housing Authority (1995) 41 Cal.App.4th 82, 48 Cal.Rptr.2d 353 (Zuniga), "[a] public entity is not liable for tortious injury unless the liability is imposed by statute. (Gov.Code, § 815.)[[3]] `Moreover, under subdivision (b) of section 815, the immunity provisions of the California Tort Claims Act ... will generally prevail over any liabilities established by statute. [Citations.] In short, sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.'" (Id. at p. 92, 48 Cal.Rptr.2d 353, quoting Cochran v. Herzog Engraving Co. (1984) 155 Cal.App.3d 405, 409, 205 Cal.Rptr. 1, fn. omitted; accord, Allyson v. Department of Transportation (1997) 53 Cal.App.4th 1304, 1313, 62 Cal.Rptr.2d 490.)
*101 Consequently, the general rule is that a public entity is not liable unless a statute imposes liability. Wright points to a general liability statute, section 815.2, subdivision (a), which provides that a public entity is liable if its employee is liable. As Wright acknowledged at oral argument, there are two immunity provisions of the California Tort Claims Act specifically related to a public entity's immunity for a prisoner's medical care. (Zuniga, 41 Cal.App.4th at p. 92, 48 Cal.Rptr.2d 353 [immunity provisions prevail over statutory liabilities]; see Estate of Mason (1990) 224 Cal.App.3d 634, 638, 274 Cal.Rptr. 61 [a specific statute takes precedence over a general statute].) Those provisions provide that "a public entity is not liable for ... [a]n injury to any prisoner." (§ 844.6, subd. (a)(2).) And, a public entity also is not "liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner...." (§ 845.6.)
The State and the Department, as public entities, are immune from liability for Wright's counts of intentional infliction of emotional distress and negligence. The trial court properly sustained the demurrer as to these counts and dismissed them with prejudice.

DISPOSITION
The judgment is affirmed.
We concur: HULL and ROBIE, JJ.
NOTES
[1] Undesignated section references are to Title 15 of the California Code of Regulations unless otherwise noted.
[2] We note, however, that both due process and the requirement of an effective administrative remedy limit the time the Department has to complete an exceptional third formal level review. (See Thompson, supra, 52 Cal.App.3d at p. 783, 125 Cal.Rptr. 261 [noting that exhaustion is not required where an effective remedy is lacking].) Thus, the Department must complete an exceptional third-level review within a reasonable period.
[3] References to undesignated sections in this part of the discussion are to the Government Code.