Filed 2/16/16  Larson v. Heck CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HARVEY EUGENE LARSON, Plaintiff and Appellant, v. C. HECK et al., Defendants and Respondents. | D068232 (Super. Ct. No. 37-2014-00007315-CU-FR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.


Harvey Eugene Larson, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Jonathan L. Wolff, Assistant Attorney General, Thomas S. Patterson and Sylvie P. Snyder, Deputy Attorneys General, for Defendants and Respondents.

Plaintiff Harvey Eugene Larson appeals from a judgment of dismissal following the sustaining of the demurrer of defendants C. Heck and M. Alcala without leave to amend. Because Larson failed to exhaust his administrative remedies, we affirm.

Larson, an inmate at California State Prison, Corcoran (Corcoran), represented himself in the trial court and is representing himself in this appeal. Nonetheless, we are mindful that the same procedural rules apply to Larson as to parties represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

I.

FACTUAL AND PROCEDURAL BACKGROUND

In this appeal following the sustaining of a demurrer, our recitation of the facts assumes the truth of the properly pleaded or implied factual allegations. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

A. *The Complaint*

Larson named various defendants, two by name and title and others by job descriptions and Doe designations. Based on allegations in and exhibits attached to the complaint, we understand that all of the defendants are individuals who worked at Corcoran during the relevant time period. Using a Judicial Council of California form complaint, Larson stated initially that he was asserting causes of action for general negligence and for mail fraud, but in the required attachment he included only one cause of action for general negligence. Larson alleged that by "d[e]stroy[ing] specification[s and] drawings" that Larson placed in prison mail, the defendants prevented a patent from "being published," causing Larson to suffer damages while at Corcoran.

2

In April 2012, Larson submitted patent application number 13/506,350 to the United States Patent and Trademark Office (USPTO). In August 2012, the USPTO sent Larson a " 'Notice to File Missing Parts.' " Later in August 2012, Larson submitted substitute specifications and drawings in response to the USPTO's notice.[1] These specifications and drawings were "in compliance." However, Doe defendants "John Doe Mailroom Staff" and other "John Doe Prison Employees" destroyed the drawings rather than mailing them.

In September 2012, December 2012 and February 2013, the USPTO sent Larson notices of an incomplete reply. On May 16, 2013, the USPTO sent Larson notice that it deemed Larson's application abandoned because he did not reply to the USPTO's August 2012 notice to file missing parts.

On June 26, 2013, Larson filed a grievance with the authorities at Corcoran (Appeal No. 1), alleging interference with his legal mail. On the form, Larson referenced

_____

[1]    The complaint alleges that Larson mailed the documents on *September* 26, 2012. However, " '[i]f facts appearing in the exhibits contradict those alleged [in the complaint], the facts in the exhibits take precedence.' " (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282.) Here, certain exhibits to the complaint strongly suggest Larson mailed the documents on *August* (not September) 26, 2012: exhibit C, is a proof of service by mail, signed by Larson under penalty of perjury on *August 26*, 2012, which indicates Larson gave an envelope containing "legal/confidential documents" to a Corcoran correctional officer for mailing on *August 26*, 2012; exhibit J is a grievance form Larson prepared and submitted to Corcoran in June 2013 in which Larson alleges he mailed the documents on *August 26*, 2012; and exhibit D is a response from the USPTO to a submission by Larson (which, by its description likely contained the documents described in exhibit C) received by the USPTO on *August 30*, 2012. We will assume Larson mailed the documents on *August 26*, 2012, although the difference of a month does not affect our analysis of the issues or the disposition of the appeal.

3

the USPTO's May 16, 2013 notice of abandonment of patent application, as well as the USPTO's September 2012, December 2012 and February 2013 notices of incomplete reply. More specifically, Larson wrote on the June 26, 2013 form: "Prison employees distroy the mechanical drawings or refuse to mail the drawings untampered to the [USPTO], and may of decieved petitioner into thinking that a patent has been filed in petitioner's name." [*Sic.*]

A week later, on July 3, 2013, Corcoran's appeals coordinator cancelled Appeal No. 1 on the basis Larson had exceeded the time limit for submitting the appeal.[2] In response, on July 15, 2013, Larson wrote to Corcoran's appeals coordinator, explaining the delay in submitting Appeal No. 1. On July 17, 2013, the appeals coordinator returned Larson's document on the basis Larson was attempting inappropriately to resubmit the previously cancelled Appeal No. 1.[3]

In August 2013, Larson filed an appeal challenging the cancellation of Appeal No. 1 (Appeal No. 2). Within days, Corcoran's appeals coordinator returned the

---

[2] "An appeal may be cancelled for any of the following reasons . . . : [¶] . . . [¶] Time limits for submitting the appeal are exceeded . . . ." (Cal. Code Regs., tit. 15 § 3084.6, subd. (c)(4); further undesignated section references are to title 15 of the California Code of Regulations.) An inmate's first level appeal must be filed within 30 calendar days of first having knowledge of the action being appealed. (§ 3084.8, subd. (b)(2).) Larson knew his patent application was deemed abandoned by notice dated *May 16, 2013*, yet he did not initiate Appeal No. 1 until *June 26, 2013* — more than 30 days later.

[3] Once an appeal has been cancelled, that appeal may not be resubmitted. (§ 3084.6, subd. (e).) However, a separate appeal can be filed on the cancellation decision, and the original appeal may be resubmitted if the appeal on the cancellation is granted. (§ 3084.6 subd. (a)(3).)

documents Larson had submitted, rejecting Appeal No. 2 on the basis Larson had failed to include a specifically identified "necessary supporting document[]."[4]  The complaint is unclear, but Larson appears to have submitted something in response, because in September 2013 the Corcoran appeals coordinator then cancelled Appeal No. 2 on the basis Larson had exceeded the time limit for submitting the appeal.[5]

Although not affirmatively alleged in the complaint, a review of portions of exhibit A to Larson's complaint suggests that, at the same time as he was pursuing his appeals at Corcoran, he also was pursuing relief with the USPTO.  While Larson's continued efforts with the USPTO are irrelevant to this appeal (because we decide it based on Larson's failure to exhaust the required administrative remedies at Corcoran), we nonetheless acknowledge what appear to be Larson's efforts and the USPTO's responses, as follows:  in July 2013, Larson filed a request that the USPTO reconsider its May 16, 2013 notice of abandonment of Larson's patent application; the USPTO considered Larson's request a petition to withdraw the abandonment and dismissed it with an explanation in a written decision in August 2013;[6] later in August 2013, Larson submitted a further request for reconsideration in which he attempted to reply to the

---

[4]     "An appeal may be rejected for any of the following reasons . . . : [¶] . . . [¶]  The appeal is missing necessary supporting documents . . . ."  (§ 3084.6, subd. (b)(7).)

[5]     "An appeal may be cancelled for any of the following reasons . . . : [¶] . . . [¶] Time limits for submitting the appeal are exceeded . . . ."  (§ 3084.6, subd. (c)(4).)

[6]     The USPTO considered Larson's application abandoned (as opposed to denied) based on Larson's failure to timely file a complete and proper reply to the USPTO's August 2012 notice to file missing parts.

explanation the USPTO provided in its written decision dismissing the petition to withdraw the abandonment; the USPTO considered Larson's request a renewed petition to withdraw the abandonment and again dismissed it with an explanation in a written decision in October 2013; and later in October 2013, Larson wrote the USPTO a letter, which the USPTO treated as a petition to revive the application and dismissed it with an explanation in a written decision.[7]

In March 2014, Larson filed the underlying action, alleging that the defendants' destruction of the specifications and drawings that he intended to mail to the USPTO caused damage to him.

B.    *The Demurrer*

Heck and Alcala (together, Defendants) demurred to Larson's complaint.[8]  They argued that the complaint did not allege (1) compliance with the applicable claims statute, (2) exhaustion of Corcoran's administrative remedies, and (3) facts sufficient to constitute a cause of action.  Larson filed three oppositions — one each in August 2014, December 2014 and February 2015.  Following oral argument, the trial court agreed with the first two arguments and sustained Defendants' demurrer without leave to amend.

---

[7]    The complaint does not contain either a copy of Larson's October 2013 letter or a dated or complete copy of the USPTO's response.  This lack of documentation does not affect our analysis of the issues or the disposition of the appeal.

[8]    Larson named Heck in the complaint, and from the demurrer, we understand that Larson served Alcala as "John Doe Mailroom Staff."

C.   *The Appeal*

In May 2015, the court entered a judgment of dismissal as to Defendants, and Larson timely appealed in June 2015.

II.

DISCUSSION

In his brief, Larson presents arguments as to purported error in the trial court's reasoning on each of the two bases on which the trial court sustained the demurrer.  He contends that he sufficiently complied with the applicable claims statute and that he sufficiently exhausted the required administrative remedies.  As we explain, Larson did not meet his burden in establishing reversible error with regard to exhaustion of administrative remedies.[9]

A.   *Standard of Review*

When reviewing a judgment dismissing a complaint after a demurrer is sustained without leave to amend, we assume the truth of the complaint's properly pleaded or implied factual allegations.[10]  (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)  In so doing, we give the complaint a reasonable interpretation, reading it in context.  (*Ibid.*)  Where, as here, the trial court has sustained the demurer without leave to amend, we determine first

---

[9]   Because we affirm the judgment based on Larson's failure to exhaust the required administrative remedies, we need not discuss — and we express no opinion on — the issues and arguments related to compliance with the applicable claims statutes.

[10]   We may also consider judicially noticed matters (*Schifando*, *supra*, 31 Cal.4th at p. 1081), although none have been brought to our attention in this appeal.

whether the complaint states facts sufficient to state a cause of action and, if so, then whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Ibid.*) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid.*) The plaintiff has the burden of establishing reversible error. (*Ibid.*)

B.       *Larson Did Not Meet His Burden of Establishing Reversible Error with Regard to Exhaustion of Administrative Remedies*

"A California state prisoner must exhaust available administrative remedies before filing a lawsuit." (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379 (*Parthemore*).) This means that, for a plaintiff like Larson who has a prison grievance, " ' "relief must be sought by exhausting this remedy before the courts will act." ' " (*Ibid*.) The exhaustion requirement furthers important societal and governmental interests: "it may mitigate damages; promote judicial economy; encourage prisoners to make full use of the prison grievance processes; provide prisons with a fair opportunity to correct their own errors; reduce the quantity of prisoner suits; and provide a record for courts to review." (*Id.* at p. 1380.) Because the exhaustion of administrative remedies " 'is a jurisdictional prerequisite to resort to the courts' " (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 84-85), a plaintiff's failure to exhaust administrative remedies is a proper basis for bringing a demurrer (*Parthemore*, at p. 1379).

Prison grievances, often referred to as appeals, are handled through a multilevel administrative review process set forth in title 15 of the California Code of Regulations. (§ 3084 et seq.; see *Parthemore*, *supra*, 221 Cal.App.4th at p. 1380.) Under the

8

regulatory scheme, exhaustion of the administrative remedies includes an inmate's appeal of "any policy, decision, action, condition, or omission" by the California Department of Corrections or its staff that has "a material adverse effect upon his or her health, safety, or welfare." (§ 3084.1, subd. (a).) Subject to exceptions not applicable here, this administrative appeal process generally consists of the opportunity for *three* levels of formal review: a first and second level response by the appeals coordinator, and a third level response by the appeals chief. (§ 3084.8, subd. (c).) Completion of the *third* level of review is required before administrative remedies are deemed exhausted for purposes of filing a lawsuit. (§ 3084.1, subd. (b); see *Wright v. State* (2004) 122 Cal.App.4th 659, 667 (*Wright*).)

There is no dispute here with regard to the *third* level of review. Neither the record nor the appellate briefing suggests that Larson pursued such review.

Larson first argues that he did, in fact, exhaust the required administrative remedies. However, the citations to the record on which Larson relies refer only to Appeal Nos. 1 and 2 and pleadings filed in the superior court. Because Larson did not pursue the third level of review, he did not exhaust his administrative remedies. (*Wright*, *supra*, 122 Cal.App.4th at p. 667.)

Larson next contends that the exhaustion of administrative remedies is not required where it would be futile, citing *McCarthy v. Madigan* (1992) 503 U.S. 140 (prisoner who seeks only money damages not required to exhaust administrative remedies provided by grievance procedures). Initially, because Larson did not raise this argument in his opposition to Defendants' demurrer in the trial court, he forfeited

9

appellate review of the argument. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750.) Even if we exercise our discretion to consider the argument since it is purely a legal issue (*ibid.*), it still fails. *McCarthy* was superseded by statute,[11] and exhaustion of administrative remedies "is mandatory"; "[p]risoners must now exhaust all 'available' remedies[,]" both state and federal.[12] (*Woodford v. Ngo* (2006) 548 U.S. 81, 85; see *Wright*, *supra*, 122 Cal.App.4th at p. 664 ["Under both state and federal law, a prisoner must exhaust available administrative remedies before seeking judicial relief."].) Finally, under California law, for purposes of an exception to the requirement that a claimant exhaust administrative remedies before proceeding in court, "futility" will apply "only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case." (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313 [taxpayer suit].) Here, there is no indication — and Larson does not suggest one exists — that Corcoran had taken any position, let alone declared what its ruling would be, in a third level review by the appeals chief regarding *either* the substantive claim related to the prison officials' purported interference with Larson's mail *or* the procedural claim related to Larson's excuse for the untimely filing of Appeal No. 1.

---

[11]   Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997e et seq. (PLRA); *id.* at § 1997e(a).

[12]   After arguing that exhaustion of the administrative remedies would be futile, Larson cites authority for the proposition that destruction of intellectual property can be a violation of the federal Constitution. Without commenting on the accuracy of Larson's statement, we note that in California exhaustion of administrative remedies is required even when constitutional challenges are raised. (*PegaStaff v. Public Utilities Com.* (2015) 236 Cal.App.4th 374, 389.)

Thus, as a matter of California law, Larson did not establish futility in pursuing the required administrative procedures.

Finally, Larson argues that the exhaustion requirement does not apply to his claim, because it is not based on a prison *condition*, but rather on interference with his legal mail. In support, he relies on *Marvin v. Goord* (2d Cir. 2001) 255 F.3d 40, in which a prisoner filed a PLRA claim based in part on the allegation that prison officials had seized his legal mail.[13] (*Marvin*, at p. 41.) There, for purposes of requiring an exhaustion of administrative remedies, the Second Circuit distinguished between conduct directed to the prison population as whole based on prison policy or practice (requiring exhaustion) and conduct directed to one specific inmate or one specific matter (not requiring exhaustion). (*Id.* at pp. 42-43.) Although not overruled, subsequent opinions from lower courts have called into question this distinction, given the Supreme Court's later directive that "the PLRA's exhaustion requirement applies to *all inmate suits about prison life*, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (*Porter v. Nussle* (2002) 534 U.S. 516, 532, italics added.) Because Larson alleges that the officials *at prison* (Corcoran) interfered with *prison mail*, Larson's complaint concerns *prison life*. Thus, *Porter* not *Marvin* is controlling, and Larson was required to exhaust all of the required administrative remedies before filing his lawsuit regarding prison life. This result is

_____

[13] We assume, without deciding, that authority based on the federal PLRA applies to Larson's state law negligence claim.

11

consistent with section 3084.1, subdivision (a)'s jurisdictional requirement for exhaustion of administrative remedies of "any policy, decision, action, condition, or omission" by the California Department of Corrections or its staff that has "a material adverse effect upon [an inmate's] health, safety, or welfare."

For these reasons, the trial court did not err in sustaining the Defendants' demurrer.

C.    *The Trial Court Did Not Abuse Its Discretion in Denying Leave to Amend*

Larson has not suggested — either in the trial court or on appeal — how he might amend his complaint so as to comply with (or escape) the jurisdictional requirement that he have exhausted all administrative remedies. Independently, we are unaware of any potential amendments that might overcome this defect. Accordingly, the trial court did not err in denying leave to amend the complaint.

# DISPOSITION

The judgment of dismissal is affirmed.  Heck and Alcala are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

IRION, J.

WE CONCUR:

McINTYRE, Acting P. J.

PRAGER, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13