Filed 1/10/22  Hamilton v. Corujo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

| | |
|---|---|
| DAVID HAMILTON, | C088779 |
| Plaintiff and Appellant, | (Super. Ct. No. 17CVC09963) |
| v. | |
| K. CORUJO, | |
| Defendant and Respondent. | |

Plaintiff and appellant David Hamilton, an incarcerated person representing himself in propria persona, appeals from a judgment dismissing his claims against defendant and respondent K. Corujo, a correctional officer for the Department of Corrections and Rehabilitation (CDCR).  Hamilton sued Corujo for personal injuries alleged to have resulted from an excessive use of force.  The trial court sustained Corujo's demurrer to Hamilton's first amended complaint without leave to amend for failure to exhaust administrative remedies.  Hamilton appeals, arguing the first amended

1

complaint alleges facts which, taken as true, show he should be excused from exhausting administrative remedies. We disagree and affirm.

## I. BACKGROUND

Hamilton is an inmate at Mule Creek State Prison. On January 30, 2017, Hamilton filed a Judicial Council form complaint for personal injury against Corujo. The complaint alleges that Corujo used excessive force against Hamilton on May 14, 2016, causing injury to his hip. The complaint attaches various documents but fails to allege facts or otherwise show that Hamilton had exhausted his administrative remedies or was excused from doing so. Corujo demurred, arguing that Hamilton failed to allege exhaustion of administrative remedies and failed to state facts sufficient to constitute a cause of action. The trial court sustained the demurrer with leave to amend

Hamilton filed the operative first amended complaint on August 14, 2018. The first amended complaint alleges Corujo subjected Hamilton to a search outside the prison dining hall on May 14, 2016. The first amended complaint elaborates that Hamilton was holding documents concerning an unrelated disciplinary matter and asked Corujo for permission to give the documents to another officer. According to the first amended complaint, Corujo responded by "los[ing] his cool" and throwing Hamilton to the ground, causing injury to Hamilton's hip.

With respect to exhaustion of administrative remedies, the first amended complaint alleges that prison officials engaged in misconduct that thwarted Hamilton's attempts to complete the grievance process, rendering his remedies effectively unavailable, and excusing any failure to exhaust. We describe these allegations in greater detail *post*. We will also discuss some of the exhibits to the complaint and first amended complaint, many of which appear to have been generated in the CDCR grievance process. Before doing so, however, we briefly summarize that process so we can discuss the first amended complaint's allegations and exhibits in context.

2

*A.*     *CDCR Grievance Process*

California prisoners may appeal "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." (Cal. Code Regs., former tit. 15, § 3084.1, subd. (a) [repealed eff. June 1, 2020 (Register 2020, No. 13 March 25, 2020].)[1] During the relevant period, the regulations required that prisoners pursue grievances through three levels of review to exhaust their administrative remedies. (Regs., §§ 3084.1, subd. (b) & 3084.7, subd. (d)(3).)

The prisoner initiates the process by submitting a grievance on CDCR Form 602 to the prison's appeals coordinator. (Regs., § 3084.2, subd. (c).) The prisoner uses the Form 602 to describe his or her specific issue, identify the relief requested, and transmit any supporting documents. (Regs., § 3084.2, subds. (a) - (b).) The Form 602 is then screened for routine processing. (Regs., § 3084.4, subd. (b)(1).) The screening process determines whether specified content and procedural requirements have been met. (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1009, fn. 2 (*Foster*).) Grievances alleging staff misconduct constitute an exception to the regular process. (Regs., § 3084.9, subd. (i).) Where, as here, a grievance has been accepted as a staff complaint, the first level of review is bypassed, and the grievance proceeds directly to the second level of review. (Regs., § 3084.7, subds. (a) - (b).)

The second level of review is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the

---

[1] The Legislature recently repealed and replaced the regulations governing the CDCR grievance process. (Cal. Code Regs., tit. 15, §§ 3480-3486.) The new regulations became effective June 1, 2020, after Hamilton initiated the relevant appeals in the present case. (*Ibid.*) For purposes of this opinion, all further references to "Regulations" or "Regs." are to the version of title 15 of the California Code of Regulations in effect in 2016.

3

equivalent." (Regs., § 3084.7, subd. (d)(2).) The second level may involve a face-to-face interview, particularly where the first level has been bypassed. (Regs., § 3084.7, subd. (e).) When an appeal is rejected or cancelled at the second level (or any level), the prisoner must be notified of the specific reasons for the rejection or cancellation. (Regs., § 3084.5, subd. (b)(3); see also § 3084.6 [setting forth grounds for cancellation].) An appeal may be cancelled on the ground that it "duplicates an inmate or parolee's previous appeal upon which a decision has been rendered or is pending." (Regs., § 3084.6, subd. (c)(2).)

"The third level is for review of appeals not resolved at the second level." (Regs., § 3084.7, subd. (c).) "The third level review constitutes the decision of the Secretary of the [CDCR] on an appeal, and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent." (Regs., § 3084.7, subd. (d)(3).) With exceptions not here relevant, "all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted." (Regs., § 3084.1, subd. (b).) "In addition, a cancellation or rejection decision does not exhaust administrative remedies." (*Ibid.*)

B.     *Allegations and Exhibits Related to Exhaustion of Administrative Remedies*

As noted, the first amended complaint alleges prison officials engaged in misconduct that thwarted Hamilton's attempts to complete the grievance process, rendering his remedies effectively unavailable, and excusing any failure to exhaust. Specifically, the first amended complaint alleges, "After the second level was partially granted I was thwarted by wardens [*sic*] improper screening rendering prisoners [*sic*] administrative remedies effectively unavailable. I appealed those issues to the third level and was informed on 6-15-18 their response was denied on 1-10-16." (Unnecessary capitalization omitted.)

The first amended complaint further alleges: "I have performed all required conditions deemed necessary on my part absence of available state correction process,

4

which constitutes exception to the C.D.C.R. exhaustion requirement under circumstances of this case. Based on the wardens [*sic*], and prison administrative officials [sic] mistake rendering my administrative remedies effectively unavailable by improper screening [of] the grievances." (Unnecessary capitalization omitted.)

The first amended complaint further alleges, "I have provided C.D.C.R. officials full notice in my grievances that I intend to seek monetary damages, and that the staff misconduct included a set of other related issues, but the official administrative appeals coordinators and Warden Lizzaraga failed to adequately address those issues and rendered the screening process improper and effectively unavailable." (Unnecessary capitalizations omitted.)

### 1. *Grievance No. MCSP-A-16-01577*

The first amended complaint attaches approximately 40 pages of exhibits. The exhibits include a copy of a Form 602 submitted by Hamilton on May 20, 2016 (Grievance No. MCSP-A-16-01577). The Form 602 for Grievance No. MCSP-A-16-01577 describes the incident involving Corujo and requests an investigation, including a review of surveillance video and an admonition against retaliation. The Form 602 bears stamps indicating that the grievance bypassed the first level of review and was accepted at the second level. The Form 602 also indicates that Hamilton's request for relief was granted, in part, and Hamilton was scheduled to be interviewed. Hamilton received the second level response on or about August 19, 2016.

Section F of the Form 602 instructs prisoners dissatisfied with the second level response to explain their reasons in the space provided and mail the form within 30 days of receipt of the prior response to the Chief of the Inmate Appeals Branch in Sacramento. Hamilton signed the Form 602 on August 23, 2016, indicating he was dissatisfied with the second level response. He did not explain why he was dissatisfied. It is not clear whether Hamilton mailed the Form 602 for Grievance No. MCSP-A-16-01577 to the Chief of the Inmate Appeals Branch.

5

### 2. *Grievance No. MSCP-A-16-01862*

The record reveals that Hamilton submitted another Form 602 on or about July 25, 2016 (Grievance No. MSCP-A-16-01862).**2** The Form 602 for Grievance No. MSCP-A-16-01862 describes the incident involving Corujo in greater detail and requests preservation of surveillance video from the dining hall. The Form 602 for Grievance No. MSCP-A-16-01862 also requests that various medical records and the video be received and considered as evidence, and that Corujo be admonished against retaliation and reassigned to another post.

A memorandum attached as an exhibit to the first amended complaint indicates that Grievance No. MSCP-A-16-01862 was cancelled at the first level as duplicative of a previous appeal pursuant to Regulations section 3084.6, subdivision (c)(2). The memorandum, which appears to have been mistakenly dated July 19, 2016 (before the Form 602 for Grievance No. MSCP-A-16-01862 was submitted), states, in part, "The Warden has determined this is a duplicate of appeal log # 16-01862." However, the memorandum contains handwritten modifications, with the deletion of the grievance number in the last sentence, and the addition of a new number, "16-01577." The memorandum thus suggests that Grievance No. MSCP-A-16-01862 was cancelled as duplicative of Grievance No. MCSP-A-16-01577.

### 3. *Grievance No. MSCP-A-16-02656*

The record reveals that Hamilton submitted another Form 602 on August 19, 2016 (Grievance No. MSCP-A-16-02656).**3** The Form 602 for Grievance No. MSCP-A-16-02656 challenges and seeks to reverse the cancellation of Grievance No. MSCP-A-16-

---

**2** Grievance No. MSCP-A-16-01862 was not attached to the first amended complaint but appears to have been attached to the original complaint.

**3** Grievance No. MSCP-A-16-02656 was not attached to the first amended complaint but appears to have been attached to the original complaint.

6

01862.  The Form 602 for Grievance No. MSCP-A-16-02656 bears stamps indicting that the grievance bypassed the first level of review and was denied at the second level on September 22, 2016.  A memorandum attached to the first amended complaint and dated September 22, 2016, explains that Grievance No. MSCP-A-16-02656 was denied because there was "significant overlap" in the issues presented in Grievance No. MCSP-A-16-01577 and Grievance No. MSCP-A-16-01862, a conclusion Hamilton appeared to affirm in an interview in which he asserted that the "only issue" he wanted to address through Grievance No. MSCP-A-16-01862 was Corujo's alleged use of excessive force.

Hamilton signed Section F of the Form 602 for Grievance No. MSCP-A-16-02656 on September 29, 2016, indicating he was dissatisfied with the second level response.  As indicated above, Section F instructs prisoners dissatisfied with the second level response to mail the Form 602 to the Chief of the Inmate Appeals Branch in Sacramento within 30 days of receipt of the prior response.  It is not clear whether Hamilton mailed the Form 602 for Grievance No. MSCP-A-16-02656 to the Chief of the Inmate Appeals Branch.

    *4.       Form 22 Request to Inmate Appeals Branch*

Hamilton submitted a request on CDCR Form 22 to the Chief of the Inmate Appeals Branch on June 8, 2018.[4]  In the Form 22, which was attached as an exhibit to the first amended complaint, Hamilton indicated he had not received third level responses for Grievance No. MCSP-A-16-01577 or Grievance No. MSCP-A-16-02656.  A staff response from the Inmate Appeals Branch dated June 15, 2018, states:  "[Grievance No. MSCP-A-16-02656] was rejected and returned to you on 1/10/16 along with a letter

---

[4] Form 22, entitled "Inmate/Parolee Request for Interview, Item or Service," is used as part of a written request process intended to facilitate timely resolution of routine matters. (Regs., § 3086, subd. (a).)  Use of Form 22 "does not constitute exhaustion of administrative remedies" as defined in Regulation section 3084.1, subdivision (b). (Regs., § 3086, subd. (i).)

explaining why it was rejected."[5]  "Also," the staff response continues, "the Office of Appeals has no record of receiving [Grievance No. MCSP-A-16-01577]."

C.    *Demurrer to First Amended Complaint*

Corujo demurred to the first amended complaint, arguing that Hamilton failed to allege facts showing that he had exhausted his administrative remedies or was excused from doing so, and failed to state facts sufficient to constitute a cause of action.  Hamilton opposed the demurrer, arguing the first amended complaint alleged facts showing that exhaustion should be excused.  Specifically, Hamilton argued, as he does here, that exhaustion should be excused because Grievance No. MSCP-A-16-01862 was improperly screened and wrongly cancelled as duplicative of Grievance No. MCSP-A-16-01577.

Hamilton also submitted a declaration in support of his opposition to the demurrer, averring, in pertinent part:  "I was improperly screened out by Warden Lizzaraga and attempted to challenge the errors but the appeals process thereafter became effectively unavailable to me, and although I through diligents [*sic*] went to third level [Grievance No. MCSP-A-16-01577] the appeal was lost between Sacramento and [Mule Creek State Prison] whom on 7-22-2018 stated they rejected it with an attached letter Jan. 10. 2016 that I never received."  (Unnecessary capitalization omitted.)  The trial court sustained the demurrer without leave to amend, following a hearing at which Hamilton failed to appear.[6]  This appeal timely followed.

---

[5] As noted, the Form 602 for Grievance No. MSCP-A-16-02656 was filed on August 19, 2016.

[6] Hamilton asserts that he was unable to appear for the hearing on the demurrer due to restrictions related to COVID-19.  However, the hearing took place in October 2018, before the COVID-19 pandemic.  In any event, we acknowledge that Hamilton is likely subject to other restrictions that may make court calls difficult.

## II. DISCUSSION

### A. *Standard of Review*

On appeal from a judgment based on an order sustaining a demurrer, we assume all the facts alleged in the complaint are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.) We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We read the complaint as a whole and its parts in their context to give the complaint a reasonable interpretation. (*Evans v. City of Berkeley, supra,* at p. 6.)

When a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

### B. *Exhaustion of Administrative Remedies or Excuse for Not Exhausting*

The general rule is that "a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies." (*In re Dexter* (1979) 25 Cal.3d 921, 925; see *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 [exhaustion of administrative remedies is required before initiating a private civil action]; see also *Foster, supra,* 61 Cal.App.5th at p. 1023 ["Where administrative remedies exist, California courts usually will not have subject matter jurisdiction over a dispute until the administrative tribunal has made a final determination"].) The exhaustion requirement applies to prisoner grievances, even where the prisoner seeks money damages unavailable in the administrative process. (*Wright v. State of California* (2004) 122 Cal.App.4th 659, 671; *Foster, supra,* at p. 1023.) As previously discussed, prison grievances are subject to a multilevel review process, and

9

administrative remedies are not deemed exhausted until the appeal reaches the third level. (Regs., §§ 3084.1, 3084.7.)

California courts recognize a limited number of exceptions to the exhaustion doctrine. (*Foster, supra,* 61 Cal.App.5th at p. 1025.) One such exception exists where administrative remedies are "unavailable." (*Id.* at pp. 1025-1027.) The Court of Appeal for the Fifth Appellate District considered circumstances in which administrative remedies might be considered "unavailable" to prisoners in *Foster*. Relying on *Ross v. Blake* (2016) 578 U.S. 632, 633, in which the United States Supreme Court considered the unavailability of administrative remedies under the Prison Litigation Reform Act of 1995, the *Foster* court identified " 'three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief.' " (*Foster, supra,* at p. 1026.) "First," the court explained, "an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates. [Citation.] Second, an administrative scheme might be so difficult to understand that no ordinary prisoner can discern or navigate it and, therefore, for practical purposes, the administrative scheme is incapable of use. [Citation.] Third, an administrative procedure is unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " (*Ibid.*)

The *Foster* court was concerned with the third category of unavailability, which appears to be Hamilton's primary focus. (*Foster, supra,* 61 Cal.App.5th at pp. 1026-1027.) The *Foster* court explained: "Because the reasons for the federal and state law exhaustion requirements are essentially the same, we conclude the third category also identifies circumstances in which an administrative procedure is 'unavailable' to an inmate for purposes of California law." (*Ibid.,* fn. omitted.) "Thus," the *Foster* court concluded, "an inmate is excused from exhausting the appeal procedure through the third

10

level of review when prison officials have thwarted the inmate's attempts to complete the grievance process through machination, misrepresentation or intimidation." (*Id.* at p. 1027, fn. omitted.)

We are persuaded by the *Foster* court's reasoning, and likewise conclude that an inmate may be excused from exhausting administrative remedies through the third level where prison officials have thwarted the inmate's attempts to complete the grievance process through machination, misrepresentation, or intimidation. (*Foster, supra,* 61 Cal.App.5th at p. 1027.) We next consider whether the first amended complaint alleges facts sufficient to show that prison officials thwarted Hamilton's attempts to complete the grievance process through machinations, misrepresentation, or intimidation. We conclude it does not.

The first amended complaint alleges prison officials improperly screened Hamilton's grievances. Improper screening renders administrative remedies effectively unavailable, as Hamilton correctly observes. (*Foster, supra,* 61 Cal.App.5th at p. 1030.) However, an inmate attempting to establish an excuse for exhaustion based on improper screening must do more than offer bare conclusions; he or she must allege specific facts showing how the prison officials allegedly manipulated or obstructed the grievance process. (*Id.* at p. 1028 ["To properly plead the excuse of unavailability based on prison officials' machinations, misrepresentations, or intimidation, the pleading must state how, when, where, to whom, and by what means the machinations, misrepresentations or intimidation were accomplished"].) This is where Hamilton comes up short.

The first amended complaint generally alleges Warden Lizarraga and other unnamed officials improperly screened Hamilton's grievances. But the first amended complaint does not specify which grievances were improperly screened, how they were improperly screened, or why the allegedly improper screening of any grievance rendered the administrative process unavailable to Hamilton. These pleading failures are fatal to Hamilton's attempt to allege improper screening as a basis for excusing the exhaustion

11

requirement. (*Foster, supra,* 61 Cal.App.5th at pp. 1028-1029.) Having failed to adequately allege exhaustion of administrative remedies or an excuse for failing to exhaust, Hamilton also failed to state a cause of action on which relief could be granted. (*Id.* at pp. 1023-1024.) The trial court properly sustained the demurrer to the first amended complaint.

## C.    *Leave to Amend*

We next consider whether the trial court abused its discretion in denying leave to amend. As noted, the burden of proving a reasonable possibility that a complaint can be amended to state a viable cause of action falls "squarely on the plaintiff." (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.) "To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Id.* at p. 44.)

Hamilton does not discuss leave to amend at all in his opening brief. He offers no new allegations supporting the possibility of amending the first amended complaint to allege a viable excuse for exhaustion, and no legal authority explaining how he would overcome the failure to allege exhaustion of administrative remedies or an excuse for failing to exhaust. Hamilton's reply brief asserts the trial court erred in denying leave to amend, but offers no reason for the failure to raise the point earlier, and again fails to explain how Hamilton would amend to adequately allege an excuse for exhaustion. (*Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 694, fn. 3 [appellants' assertion that they should have been granted leave to amend, raised for the first time in reply and without good cause shown for raising the point earlier, rejected].) Under the

12

circumstances, we conclude that Hamilton has failed to carry his burden of showing that the trial court abused its discretion in sustaining the demurrer without leave to amend. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

### III.  DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal in the interest of justice.  (See Cal. Rules of Court, rule 8.278(a)(5).)

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KRAUSE, J.